# COMPOSITE EXHIBIT "A"

MIN: ███████████     **NOTE**     Loan Number: ███████████

| JUNE 26, 2018 | SAN FRANCISCO | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

49 GREEN AVE, RYE, NEW YORK 10580
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $1,999,999.00       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is PARKSIDE LENDING, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY                                                             .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       5.125 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st   day of each month beginning on       AUGUST 1       , 2018    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on       JULY 1, 2048       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  PO BOX 11733, NEWARK, NEW JERSEY 07101-4733

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 10,889.73                     .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
Philip Michael Scioli          -Borrower

*[Sign Original Only]*

NEW YORK FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01                    Page 3 of 3

**DocMagic** *eForms*
*www.docmagic.com*

## PARKSIDE LENDING, LLC., A California Limited Liability Corporation

## <u>Allonge to Note</u>

Loan No.: ███████

Investor Loan No.:

This instrument is to serve as an allonge to the note dated: 06/26/2018

In the Amount of: $1,999,999.00

Borrower Name(s): Philip Michael Scioli

Property Address: 49 GREEN AVE, RYE, New York, 10580

Pay to the Order of:

Without recourse Parkside Lending, LLC., A California Limited Liability Corporation

_____

Matthew J. Ostrander, CEO

Authorized signatory on behalf of Parkside Lending, LLC., A California Limited Liability Corporation

Parkside Lending, LLC, A California Limited Liability Corporation
180 Redwood Street Suite 250
San Francisco, CA 94102
Phone: 415-771-3700 Fax: 415-252-0842

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

**\*581903163MTG0010\***

# Westchester County Recording & Endorsement Page

## Submitter Information

| | | | |
|---|---|---|---|
| Name: | Future Title Agency, Inc. | Phone: | 914-666-7770 |
| Address 1: | Attn: Mary E. Rasamny | Fax: | 914-666-7767 |
| Address 2: | 280 North Bedford Rd., Suite 307 | Email: | ftc@futuretitleco.com |
| City/State/Zip: | Mount Kisco NY 10549 | Reference for Submitter: | Seery |

## Document Details

| | | | |
|---|---|---|---|
| Control Number: | **581903163** | Document Type: | **Mortgage (MTG)** |
| Package ID: | 2018061100174001001 | Document Page Count: **17** | Total Page Count: **18** |

## Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: SCIOLI PHILIP M | - Individual | 1: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | - Other |
| 2: SCIOLI MARY N | - Individual | 2: PARKSIDE LENDING LLC | - Other |

## Property

☐ Additional Properties on Continuation page

| | | | |
|---|---|---|---|
| Street Address: | 49 GREEN AVENUE | Tax Designation: | ▮ |
| City/Town: | RYE CITY | Village: | |

## Cross- References

☐ Additional Cross-Refs on Continuation page

| 1: | 2: | 3: | 4: |
|---|---|---|---|

## Supporting Documents

### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $90.00 |
| Cross-Reference Fee: | $0.00 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| Total Recording Fees Paid: | **$130.00** |

### Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

### Mortgage Taxes

| | |
|---|---|
| Document Date: | 6/26/2018 |
| Mortgage Amount: | $1,999,999.00 |
| Basic: | $10,000.00 |
| Westchester: | $5,000.00 |
| Additional: | $5,970.00 |
| MTA: | $5,000.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$25,970.00** |
| Dwelling Type: | 1-2 Family   Exempt: ☑ |
| Serial #: | DJ06382 |

### RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded: 07/18/2018 at 03:36 PM

Control Number: **581903163**

Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

### Record and Return To

☐ Pick-up at County Clerk's office

**Prkside Lending**
**c/o Docprobe**
**1125 Ocean Ave.**
**Lakewood, NJ 08701**

Mortgage Recording Tax:

After Recording Return To:
PARKSIDE LENDING, LLC C/O DOCPROBE,
LLC
1125 OCEAN AVE
LAKEWOOD, NEW JERSEY 08701
Loan Number █████████████

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

**MI**█████████████████████████                                    **MERS Phone**█████████████

## WORDS USED OFTEN IN THIS DOCUMENT

(A) **"Security Instrument."** This document, which is dated   JUNE 26, 2018              , together with all Riders to this document, will be called the "Security Instrument."

(B) **"Borrower."**  Philip Michael Scioli And` Mary Nix Scioli, Husband And Wife

whose address is   49 GREEN AVE, RYE, NEW YORK 10580

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834.  MERS telephone number is (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

(D) **"Lender."**  PARKSIDE LENDING, LLC

will be called "Lender."  Lender is a corporation or association which exists under the laws of
CALIFORNIA
Lender's address is   180 REDWOOD STREET SUITE 250, SAN FRANCISCO, CALIFORNIA 94102

(E) **"Note."** The note signed by Borrower and dated   JUNE 26, 2018              , will be called the "Note." The Note shows that I owe Lender   ONE MILLION NINE HUNDRED NINETY-NINE THOUSAND NINE HUNDRED NINETY-NINE AND 00/100           Dollars (U.S. $ 1,999,999.00           ) plus interest and other amounts that may be payable.  I have promised to pay this debt in Periodic Payments and to pay the debt in full by   JULY 1, 2048           .

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                                Page 1 of 16                                **DocMagic** *eForms*
www.docmagic.com

(F) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider      ☐ Biweekly Payment Rider
☐ 1-4 Family Rider      ☐ Second Home Rider
☐ Condominium Rider      ☐ Other(s) [specify]

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01      Page 2 of 16      *DocMagic EForms*
*www.docmagic.com*

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) To take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A)   The Property which is located at          49 GREEN AVE                    ,
                                                      [Street]
                          RYE                              , New York     10580      .
                [City, Town or Village]                                [Zip Code]

This Property is in          WESTCHESTER          County. It has the following legal description:
Legal description attached hereto and made a part hereof
A.P.N.: Block ▮; Lot ▮

(B)   All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)   All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)   All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)   All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)   All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

# Future Title Agency, Inc.

Title No.: ███████████

## Schedule A Description

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Rye, County of Westchester, State of New York, known and designated as Lots 12, 13, 14 and 15 in Block C as shown on a certain map entitled "Map of Peningo Terrace, in the village of Rye, New York, made by J.A. Kirby Company", dated August, 1928 and filed in the Office of the Clerk of the County of Westchester, Division of Land Records, on March 13, 1929 as Map Number 3401 which said Lots and portion of said Lots when taken together are more particularly bounded and described as follows:

BEGINNING at a point at the corner formed by the intersection of the southerly side of Green Avenue with the easterly side of Knollwood Avenue;

RUNNING THENCE along said Green Avenue, South 71 degrees 04 minutes 00 seconds East 100 feet to the division line between Lots 15 and 16 in Block C as shown on said map;

THENCE along the division line between Lots 16, 17, 18 and 19 and 15, 14, 13 and 12in Block C as shown on said map, South 18 degrees 56 minutes 00 seconds west 100 feet to the division line between Lots 11 and 12 in Block C as shown on said map;

THENCE along last mentioned division line, north 71 degrees 04 minutes 00 seconds west 100 feet to the easterly said of Knollwood Avenue;

THENCE along said Knollwood Avenue, north 18 degrees 56 minutes 00 east 100 feet to the point or place of BEGINNING.

Representing Old Republic National Insurance Company
Representing First American Title Insurance Company

(G)   All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender.  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have.  I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country.  It also contains other promises and agreements that vary in different parts of the country.  My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1.   **Borrower's Promise to Pay.**  I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note.  I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency.  If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument.  Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due.  If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights.  Lender is not obligated to apply such lesser payments when it accepts such payments.  If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until I make payments to bring the Loan current.  If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me.  In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure.  No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.   **Application of Borrower's Payments and Insurance Proceeds.**  Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3.   Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                                             Page 5 of 16                               DocMagic *eForms*
                                                                                                      *www.docmagic.com*

require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to

disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                                    Page 9 of 16                    DocMagic *eForms*
                                                                                 www.docmagic.com

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by

contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make

my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and**

---

under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property** [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
Philip Michael Scioli          -Borrower

_____ (Seal)
Mary Nix Scioli                -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                    Page 15 of 16                    DocMagic *eForms*
                                                                   www.docmagic.com

—————————————— [Space Below This Line For Acknowledgment] ——————————————

State of ~~CONNECTICUT~~ New York )
                                                    ) ss.
County of _Westchester_ )

On the __26th__ day of __June_____, in the year __2018__, before me,

the undersigned, personally appeared __Philip Michael Scioli AND Mary Nix Scioli__

_____

_____ ,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of Person Taking Acknowledgment

_____
Print or Type Name

(Seal, if any)

Tax Map Information No.:   Block ▪ ████

**RICKY M CAPOZZA**
**Notary Public, State of New York**
**No. 01CA6187977**
**Qualified in Westchester County**
**Commission Expires June 2, 2020**



The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

*592133006ASS001T*

# Westchester County Recording & Endorsement Page

## Submitter Information

Name: Vsi-sls
Address 1: 183 Industry Drive
Address 2:
City/State/Zip: Pittsburgh PA 15275

Phone:
Fax:
Email:
Reference for Submitter:

## Document Details

Control Number: **592133006**
Package ID: 2019080100007001000

Document Type: **Assignment (ASS)**
Document Page Count: **2**          Total Page Count: **3**

## Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | - Other | 1: NYMT LOAN TRUST I | - Other |
| 2: PARKSIDE LENDING LLC | - Other | 2: | |

## Property

☐ Additional Properties on Continuation page

Street Address: 49 GREEN AVE          Tax Designation: ▮▮▮▮▮
City/Town: RYE CITY          Village:

## Cross- References

☐ Additional Cross-Refs on Continuation page

1: 581903163          2:          3:          4:

## Supporting Documents

## Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $15.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| Total Recording Fees Paid: | **$55.50** |

## Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

## Mortgage Taxes

Document Date:
Mortgage Amount:

| | |
|---|---|
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |

Dwelling Type:          Exempt: ☐
Serial #:

## Record and Return To

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded: 08/01/2019 at 10:21 AM
Control Number: **592133006**
Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

☐ Pick-up at County Clerk's office

**C/o Visionet Systems Inc**
**183 INDUSTRY DRIVE**

**PITTSBURGH, PA 15275**

This Instrument Prepared By:
**COMPUTERSHARE TITLE SERVICES**
**c/o VISIONET SYSTEMS INC.**
After Recording Return To:
**COMPUTERSHARE TITLE SERVICES**
**c/o VISIONET SYSTEMS INC.**
**183 INDUSTRY DRIVE**
**PITTSBURGH, PA 15275**
Voice: **1-(412) 927-0226**

---

## Assignment of Mortgage

For value received, Mortgage Electronic Registration Systems, Inc., as nominee for PARKSIDE LENDING, LLC., its successors and assigns, whose addresses are 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026 and 180 Redwood Street Suite 250, San Francisco, California 94102, respectively, hereby grants, assigns, and transfers to: **NYMT Loan Trust I,** whose address is C/O SPECIALIZED LOAN SERVICING LLC, 8742 LUCENT BOULEVARD, SUITE 300, HIGHLANDS RANCH, CO 80129-2386 all of its right, title and interest under that certain Mortgage dated June 26, 2018 executed by:

Borrower: PHILIP MICHAEL SCIOLI AND MARY NIX SCIOLI, HUSBAND AND WIFE, whose address is 49 GREEN AVE, RYE, NEW YORK 10580

To Mortgage Electronic Registration Systems, Inc., as nominee for PARKSIDE LENDING, LLC., its successors and assigns, whose addresses are 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026 and 180 REDWOOD STREET SUITE 250, SAN FRANCISCO, CALIFORNIA 94102, respectively, in the amount of: $1,999,999.00, recorded 07/18/2018 as Control No.: 581903163 of the Official Records of Westchester County, New York

Property Address: 49 GREEN AVE, RYE, NEW YORK 10580
Tax Parcel ID: SECTION: 143.11, BLOCK: 2, LOT 60
Legal Description: SEE SCHEDULE A

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an Assignment within the secondary mortgage market

Effective date: _7|29|2019_

**Mortgage Electronic Registration Systems, Inc., as nominee for PARKSIDE LENDING, LLC., its successors and assigns**

By: _Scott Slagle_
**SCOTT SLAGLE**
**ASSISTANT VICE PRESIDENT**

State of **PENNSYLVANIA**
County of **ALLEGHENY**

On _7|29|2019_ before me, Autumn R Carnegie the undersigned, a Notary Public in and for the county of ALLEGHENY in the State of Pennsylvania, personally appeared Scott Slagle, ASSISTANT VICE PRESIDENT personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

COMMONWEALTH OF PENNSYLVANIA

| NOTARIAL SEAL |
| AUTUMN R CARNEGIE |
| Notary Public |
| FINDLEY TWP, ALLEGHENY COUNTY |
| My Commission Expires Jun 6, 2020 |

**Autumn R Carnegie**
My Commission Expires: 06/06/2020

## SCHEDULE A

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE CITY OF RYE, COUNTY OF WESTCHESTER, STATE OF NEW YORK, KNOWN AND DESIGNATED AS LOTS 12,13,14 AND15 IN BLOCK C AS SHOWN ON A CERTAIN MAP ENTITLED "MAP OF PENINGO TERRACE, IN THE VILLAGE OF RYE, NEW YORK, MADE BY J.A. KIRBY COMPANY", DATED AUGUST, 1928 AND FLED IN THE OFFICE OF THE CLERK OF THE COUNTY OF WESTCHESTER, DIVISION OF LAND RECORDS, ON MARCH 13, 1929 AS MAP NUMBER 3401 WHICH SAID LOTS AND PORTION OF SAID LOTS WHEN TAKEN  TOGETHER ARE MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF GREEN AVENUE WITH THE EASTERLY SIDE OF KNOLLWOOD AVENUE;

RUNNING THENCE ALONG SAID GREEN AVENUE, SOUTH 71 DEGREES 04 MINUTES 00 SECONDS EAST 100 FEET TO THE DIVISION LINE BETWEEN LOTS 15 AND 16 IN BLOCK C AS SHOWN ON SAID MAP;

THENCE ALONG THE DIVISION LINE BETWEEN LOTS 16, 17, 18 AND 19 AND 15, 14, 13 AND 12IN BLOCK C AS SHOWN ON SAID MAP, SOUTH 18 DEGREES 56 MINUTES 00 SECONDS WEST 100 FEET TO THE DIVISION LINE BETWEEN LOTS 11 AND 12 IN BLOCK C AS SHOWN ON SAID MAP;

THENCE ALONG LAST MENTIONED DIVISION LINE, NORTH 71 DEGREES 04 MINUTES 00 SECONDS WEST 100 FEET TO THE EASTERLY SAID OF KNOLLWOOD AVENUE;

THENCE ALONG SAID KNOLLWOOD AVENUE, NORTH 18 DEGREES 56 MINUTES 00 EAST 100 FEET TO THE POINT OR PLACE OF BEGINNING.

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

**\*601813044ASS001R\***

## Westchester County Recording & Endorsement Page

### Submitter Information

Name: Vsi-sls
Address 1: 183 Industry Drive
Address 2:
City/State/Zip: Pittsburgh PA 15275

Phone:
Fax:
Email:
Reference for Submitter

### Document Details

Control Number: **601813044**
Package ID: 2020062900026001000

Document Type: **Assignment (ASS)**
Document Page Count: **3**     Total Page Count: **4**

### Parties

Additional Parties on Continuation page

**1st PARTY**
1: NYMT LOAN TRUST I          - Other
2:

**2nd PARTY**
1: WILMINGTON SAVINGS FUND SOCIETY FSB     - Other
2:

### Property

Additional Properties on Continuation page

Street Address: 49 GREEN AVE
City/Town: RYE CITY

Tax Designation:
Village:

### Cross- References

Additional Cross-Refs on Continuation page

1: 581903163     2:     3:     4:

### Supporting Documents

#### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $20.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| RPL 291 Notice Fee: | $0.00 |
| Total Recording Fees Paid: | **$60.50** |

#### Mortgage Taxes

Document Date:
Mortgage Amount:

| | |
|---|---|
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |

Dwelling Type:     Exempt: ☐
Serial #:

#### Transfer Taxes

Consideration: $0.00
Transfer Tax: $0.00
Mansion Tax: $0.00
Transfer Tax Number:

#### RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded: 06/30/2020 at 11:29 AM
Control Number: **601813044**
Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

#### Record and Return To

☐ Pick-up at County Clerk's office

**VISIONET SYSTEMS INC**
**183 INDUSTRY DRIVE**

**PITTSBURGH , PA 15275**

This Instrument Prepared By:
**COMPUTERSHARE TITLE SERVICES**
**c/o VISIONET SYSTEMS INC.**
After Recording Return To:
**COMPUTERSHARE TITLE SERVICES**
**c/o VISIONET SYSTEMS INC.**
**183 INDUSTRY DRIVE**
**PITTSBURGH, PA 15275**
Voice: 1-(412) 927-0226

---

## Assignment of Mortgage ███████

ORDER #: ███████

For value received, NYMT Loan Trust I, whose address is C/O SPECIALIZED LOAN SERVICING LLC, 8742 LUCENT BOULEVARD, SUITE 300, HIGHLANDS RANCH, CO 80129-2386, hereby grants, assigns, and transfers to: **Wilmington Savings Fund Society, FSB, not individually, but solely as Trustee for NYMT Loan Trust I** whose address is C/O SPECIALIZED LOAN SERVICING LLC, 8742 LUCENT BOULEVARD, SUITE 300, HIGHLANDS RANCH, CO 80129-2386 all beneficial interest under that certain Mortgage dated June 26, 2018 executed by:

Borrower: PHILIP MICHAEL SCIOLI AND MARY NIX SCIOLI, HUSBAND AND WIFE, whose address is 49 GREEN AVE, RYE, NEW YORK 10580

For Mortgage Electronic Registration Systems, Inc., as nominee for PARKSIDE LENDING, LLC., its successors and assigns, whose addresses are 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026 and 180 REDWOOD STREET SUITE 250, SAN FRANCISCO, CALIFORNIA 94102, respectively, in the amount of: $1,999,999.00, recorded 07/18/2018 as Control No.: 581903163 of the Official Records of Westchester County, New York

**(FOR CHAIN SEE EXHIBIT A)**

Property Address: 49 GREEN AVE, RYE, NEW YORK 10580
Tax Parcel ID: SECTION: 143.11, BLOCK: 2, LOT 60
Legal Description: SEE SCHEDULE A

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an Assignment within the secondary mortgage market

Effective date: **JUN 1 7 2020**

**NYMT Loan Trust I**
By Specialized Loan Servicing LLC, as Attorney in Fact

By: _____
**SCOTT SLAGLE**
**ASSISTANT VICE PRESIDENT**

State of **PENNSYLVANIA**
County of **ALLEGHENY**

On **JUN 1 7 2020** before me, Tina M Darick the undersigned, a Notary Public in and for the county of ALLEGHENY in the State of Pennsylvania, personally appeared Scott Slagle, ASSISTANT VICE PRESIDENT personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

**Tina M Darick**
My Commission Expires: **02/10/2021**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
TINA M DARICK
Notary Public
FINDLEY TWP, ALLEGHENY COUNTY
My Commission Expires Feb 10, 2021

## EXHIBIT A

Assignment dated 07/29/2019 from Mortgage Electronic Registration Systems, Inc., as nominee for PARKSIDE LENDING, LLC., its successors and assigns to NYMT Loan Trust I recorded on 08/01/2019 as Instrument No. 592133006

## SCHEDULE A

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE CITY OF RYE, COUNTY OF WESTCHESTER, STATE OF NEW YORK, KNOWN AND DESIGNATED AS LOTS 12,13,14 AND15 IN BLOCK C AS SHOWN ON A CERTAIN MAP ENTITLED "MAP OF PENINGO TERRACE, IN THE VILLAGE OF RYE, NEW YORK, MADE BY J.A. KIRBY COMPANY", DATED AUGUST, 1928 AND FLED IN THE OFFICE OF THE CLERK OF THE COUNTY OF WESTCHESTER, DIVISION OF LAND RECORDS, ON MARCH 13, 1929 AS MAP NUMBER 3401 WHICH SAID LOTS AND PORTION OF SAID LOTS WHEN TAKEN  TOGETHER ARE MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF GREEN AVENUE WITH THE EASTERLY SIDE OF KNOLLWOOD AVENUE;

RUNNING THENCE ALONG SAID GREEN AVENUE, SOUTH 71 DEGREES 04 MINUTES 00 SECONDS EAST 100 FEET TO THE DIVISION LINE BETWEEN LOTS 15 AND 16 IN BLOCK C AS SHOWN ON SAID MAP;

THENCE ALONG THE DIVISION LINE BETWEEN LOTS 16, 17, 18 AND 19 AND 15, 14, 13 AND 12IN BLOCK C AS SHOWN ON SAID MAP, SOUTH 18 DEGREES 56 MINUTES 00 SECONDS WEST 100 FEET TO THE DIVISION LINE BETWEEN LOTS 11 AND 12 IN BLOCK C AS SHOWN ON SAID MAP;

THENCE ALONG LAST MENTIONED DIVISION LINE, NORTH 71 DEGREES 04 MINUTES 00 SECONDS WEST 100 FEET TO THE EASTERLY SAID OF KNOLLWOOD AVENUE;

THENCE ALONG SAID KNOLLWOOD AVENUE, NORTH 18 DEGREES 56 MINUTES 00 EAST 100 FEET TO THE POINT OR PLACE OF BEGINNING.

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

**\*611483212RAG001S\***

# Westchester County Recording & Endorsement Page

## Submitter Information

| | | | |
|---|---|---|---|
| Name: | Vsi-sls | Phone: | |
| Address 1: | 183 Industry Drive | Fax: | |
| Address 2: | | Email: | |
| City/State/Zip: | Pittsburgh PA 15275 | Reference for Submitter | |

## Document Details

| | | | |
|---|---|---|---|
| Control Number: | **611483212** | Document Type: | **Registered Agreement (RAG)** |
| Package ID: | 20210528001 07001000 | Document Page Count: **10** | Total Page Count: **11** |

## Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: SCIOLI PHILIP M | - Individual | 1: WILMINGTON SAVINGS FUND SOCIETY FSB | - Other |
| 2: SCIOLI MARY N | - Individual | 2: NYMT LOAN TRUST | - Other |

## Property

☐ Additional Properties on Continuation page

| | | |
|---|---|---|
| Street Address: 49 GREEN AVE | Tax Designation: ▮▮▮▮ | |
| City/Town: RYE CITY | Village: | |

## Cross- References

☐ Additional Cross-Refs on Continuation page

| 1: 581903163 | 2: | 3: | 4: |
|---|---|---|---|

## Supporting Documents

1:  §255 Affidavit

## Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $55.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $5.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| RPL 291 Notice Fee: | $0.00 |
| Total Recording Fees Paid: | **$100.50** |

## Mortgage Taxes

| | |
|---|---|
| Document Date: | 8/28/2020 |
| Mortgage Amount: | $136,238.47 |
| Basic: | $681.00 |
| Westchester: | $340.50 |
| Additional: | $408.60 |
| MTA: | $340.50 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$1,770.60** |

## Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

| | | | |
|---|---|---|---|
| Dwelling Type: | 1-6 Family | Exempt: ☐ | |
| Serial #: | DM07091 | | |

### RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded:       05/28/2021 at 11:42 AM

Control Number:  **611483212**

Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

## Record and Return To

☐ Pick-up at County Clerk's office

**Specialized Loan Servicing, LLC**
**8742Lucent Blvd, Suite 300**

**Highlands Ranch, CO 80129**

After Recording Please Mail To:
**SPECIALIZED LOAN SERVICING LLC**

**8742 LUCENT BLVD, SUITE 300
HIGHLANDS RANCH, CO  80129**

Section/Block/Lot█████████

"The Premises is or will be improved with
a one or two family house or dwelling"

————————————————————*[Space Above This Line For Recording Data]*——————————

Original Principal Amount **$1,999,999.00**
Unpaid Principal Amount **$1,971,150.81**          Loan No:█████████
New Principal Amount **$2,107,389.28**
Total Cap Amount **$136,238.47**

# MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: **August 28, 2020**
Borrower ("I"): **PHILIP MICHAEL SCIOLI AND MARY NIX SCIOLI** whose address is **49 GREEN AVE, RYE, NY  10580** ("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
Lender or Servicer ("Lender"): **SPECIALIZED LOAN SERVICING LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I** whose principal place of business and mailing address is **8742 LUCENT BLVD, SUITE 300, HIGHLANDS RANCH, CO  80129** ("Lender").
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **June 26, 2018**

Original security instrument in the amount of **$1,999,999.00** and recorded on **July 18, 2018** in Book, Volume, or Liber No. **N/A**, at Page **N/A** (or as Instrument No. **581903163**) , in the Office of the County Clerk or Register of **WESTCHESTER** County, State of **NEW YORK**.

Loan Number: █████████

Property Address ("Property"): **49 GREEN AVE, RYE, NY 10580**

Legal Description: **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

CHAIN OF TITLE: **SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF:**

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

Modification Agreement
Proprietary █████              Page 1 of 10                    ████████


* 1 0 1 9 6 0 4 6 4 7 *

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations** ████████████████████

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. Property Type: Single Family

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. ████████████████████████████████ Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **September 1, 2020** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if ████████████████████████████████ a trial period plan, this modification will not take effect. The first modified payment will be due on **October 1, 2020.**

    A. The new Maturity Date will be: **September 1, 2060.**

    B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, if applicable in addition to any fees or costs that have been or will be incurred in connection with the enforcement of the security agreement including those costs and fees associated with the closing and dismissal of any foreclosure action as applicable and deferred principal and other deferred amounts from a prior modification, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be

---

**Modification Agreement**
Proprietary ███████



$2,107,389.28 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  Interest at the rate of **3.250%** will begin to accrue on the New Principal Balance as of **September 1, 2020** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **October 1, 2020**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 3.250% | 09/01/2020 | $7,850.89 | $3,320.79, may adjust periodically | $11,171.68, may adjust periodically | 10/01/2020 | 480 |

Borrower promises to make monthly payments of principal and interest per the above payment schedule beginning on **October 1, 2020**, and continuing thereafter on the same day of each succeeding month. At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. Your initial monthly escrow payment will be **$3,320.79**. Your initial total monthly payment will be **$11,171.68**.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest- only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  If on **September 1, 2060**, ('Maturity' or 'Modified Maturity Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Modified Maturity Date.

4.  **Additional Agreements.** I agree to the following:



A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co- borrower is deceased; (ii) the borrower and co- borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to



make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s),

---

**Modification Agreement**



then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. ███ ███████████████ as may be reasonably necessary █████ ) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If ██████████████████████ the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan (s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated,inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such ███████

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.



_____ (Seal)   Date: _9/10/20_____
**PHILIP MICHAEL SCIOLI**

_____ (Seal)   Date: _9|10|20_____
**MARY NIX SCIOLI**

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____ _Trustee of the_     _____ _Trust instrument dated_

_____ _For the benefit of_  _____ _(Borrower)_

_____ _Trustee of the_     _____ _Trust instrument dated_

_____ _For the benefit of_  _____ _(Borrower)_

**ACKNOWLEDGMENT**

State of _New York_

County of _Westchester_

§
§
§

On the _10_ day of _September_, in the year _2020_ before me, _Rosella Menta_, the undersigned, a Notary Public in and for said State, personally appeared **PHILIP MICHAEL SCIOLI AND MARY NIX SCIOLI** personally known to me (or proved to me on the basis of satisfactory evidence) to be the individual(s) whose name is(are) subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies) and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature of Individual Taking Acknowledgment

ROSELLA MENTA
Notary Public - State of New York
No. 01ME5067693
Qualified in Bronx/Westchester County
My Commission Expires 03/30/20__

_____
Printed Name

_____
Office of Individual Taking Acknowledgment

My Commission Expires: _____

(Seal)

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
SPECIALIZED LOAN SERVICING LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS
FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I

By: _____    SEP 1 7 2020
        Steven Ross            -Lender    _____
        Second Assistant VP            Date of Lender's Signature
                                **POA Recorded on 05/24/2021 in Control# 611443585**

## ACKNOWLEDGMENT

State of _**Colorado**_                §

County of _**Douglas**_              §
                                §

On this _17th_ day of _Sept_ in the year _2020_, before me, the undersigned, a Notary
Public in and for said State, personally appeared _**Steven Ross**_                the
_Second Assistant VP_, personally known to me (or proved to me on the basis of satisfactory evidence)
to be the individual(s) whose name is(are) subscribed to the within instrument and acknowledged to me that he/she
executed the same in his/her capacity(ies) and that by his/her signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument.

_**Highlands Ranch**_ in _**Colorado    Douglas**_
_____       _____
(insert the city or other political subdivision)    (and insert the State and County or other place the acknowledgment was taken)

ANNA SPAIN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184036432
MY COMMISSION EXPIRES 09/27/2022

_____
Signature of Individual Taking Acknowledgment
**Anna Spain**
_____
Printed Name

**Notary Public**
_____
Office of Individual Taking Acknowledgment

(Seal)                    My Commission Expires: _09/27/2022_

EXHIBIT A

BORROWER(S): PHILIP MICHAEL SCIOLI AND MARY NIX SCIOLI


LOAN NUMBER: <span style="background:black">      </span>


LEGAL DESCRIPTION:

STATE OF NEW YORK, COUNTY OF WESTCHESTER, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE CITY OF RYE,
COUNTY OF WESTCHESTER, STATE OF NEW YORK, KNOWN AND DESIGNATED AS LOTS 12, 13,
14 AND 15 IN BLOCK C AS SHOWN ON A CERTAIN MAP ENTITLED "MAP OF PENINGO
TERRACE, IN THE VILLAGE OF RYE, NEW YORK, MADE BY J.A. KIRBY COMPANY", DATED
AUGUST, 1928 AND FLED IN THE OFFICE OF THE CLERK OF THE COUNTY OF WESTCHESTER,
DIVISION OF LAND RECORDS, ON MARCH 13, 1929 AS MAP NUMBER 3401 WHICH SAID LOTS
AND PORTION OF SAID LOTS WHEN TAKEN TOGETHER ARE MORE PARTICULARLY BOUNDED
AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT AT THE CORNER FORMED BY THE INTERSECTION OF THE
SOUTHERLY SIDE OF GREEN AVENUE WITH THE EASTERLY SIDE OF KNOLLWOOD AVENUE;
RUNNING THENCE ALONG SAID GREEN AVENUE, SOUTH 71 DEGREES 04 MINUTES 00 SECONDS
EAST 100 FEET TO THE DIVISION LINE BETWEEN LOTS 15 AND 16 IN BLOCK C AS SHOWN ON
SAID MAP;
THENCE ALONG THE DIVISION LINE BETWEEN LOTS 16, 17, 18 AND 19 AND 15, 14, 13 AND 12IN
BLOCK C AS SHOWN ON SAID MAP, SOUTH 18 DEGREES 56 MINUTES 00 SECONDS WEST 100
FEET TO THE DIVISION LINE BETWEEN LOTS 11 AND 12 IN BLOCK C AS SHOWN ON SAID MAP;
THENCE ALONG LAST MENTIONED DIVISION LINE, NORTH 71 DEGREES 04 MINUTES 00
SECONDS WEST 100 FEET TO THE EASTERLY SAID OF KNOLLWOOD AVENUE;
THENCE ALONG SAID KNOLLWOOD AVENUE, NORTH 18 DEGREES 56 MINUTES 00 EAST 100
FEET TO THE POINT OR PLACE OF BEGINNING.


Parcel ID Number: <span style="background:black">      </span>
ALSO KNOWN AS: 49 GREEN AVE, RYE, NY 10580



## EXHIBIT B

**LOAN NUMBER:** ██████████

**ALSO KNOWN AS: 49 GREEN AVE, RYE, NY 10580**

**CHAIN OF TITLE:**

Mortgage made by **PHILIP MICHAEL SCIOLI AND MARY NIX SCIOLI, HUSBAND AND WIFE** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PARKSIDE LENDING, LLC, A CORPORATION, OR ASSOCIATION, ITS SUCCESSORS AND ASSIGNS** for **$1,999,999.00** and interest, dated **June 26, 2018** and recorded on **July 18, 2018** in INSTRUMENT NO./CRFN **581903163**. Mortgage Tax Paid: **$25,970.00**

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PARKSIDE LENDING, LLC, A CORPORATION, OR ASSOCIATION, ITS SUCCESSORS AND ASSIGNS** to **NYMT LOAN TRUST I**, by assignment of mortgage dated **July 29, 2019** and recorded on **August 1, 2019** in INSTRUMENT NO./CRFN **592133006**.



The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

**\*652533519ASS0013\***

# Westchester County Recording & Endorsement Page

## Submitter Information

| | | | |
|---|---|---|---|
| Name: | Meridian Asset Services | Phone: | (239) 351-2442 |
| Address 1: | 140 Fountain N Pkwy Ste 100 | Fax: | (555) 555-5555 |
| Address 2: | | Email: | amyriffe@situsamc.com |
| City/State/Zip: | Saint Petersburg FL 33716 | Reference for Submitter: | 6296856-Meridian Asset Services |

## Document Details

| | | |
|---|---|---|
| Control Number: **652533519** | Document Type: **Assignment (ASS)** | |
| Package ID: 20250910000264001000 | Document Page Count: **3** | Total Page Count: **4** |

## Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: WILMINGTON SAVINGS FUND SOCIETY FSB | - Other | 1: US BANK TRUST N A | - Other |
| 2: RESIDENTIAL MORTGAGE AGGREGATION TRUST | - Other | 2: RCF 2 ACQUISITION TRUST | - Other |

## Property

☐ Additional Properties on Continuation page

| | | |
|---|---|---|
| Street Address: 49 GREEN AVE | Tax Designation: ██████ | |
| City/Town: RYE CITY | Village: | |

## Cross- References

☐ Additional Cross-Refs on Continuation page

1: 581903163        2:        3:        4:

## Supporting Documents

### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $20.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| RPL 291 Notice Fee: | $0.00 |
| Local Tax Receipt Filing Fee: | $0.00 |
| Total Recording Fees Paid: | **$60.50** |

### Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

### Mortgage Taxes

| | |
|---|---|
| Document Date: | |
| Mortgage Amount: | |
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |
| Dwelling Type: | Exempt: ☐ |
| Serial #: | |

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded:        09/12/2025 at 09:21 AM

Control Number: **652533519**

Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

## Record and Return To

☐ Pick-up at County Clerk's office

MERIDIAN ASSET SERVICES LLC
140 FOUNTAIN PARKWAY SUITE 100

ST. PETERSBURG, FL 33716

Prepared By and Return To:

Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

Section: ▮▮▮▮▮▮▮ | Space above for Recorder's use _____

24665060

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST**, whose address is **90 PARK AVENUE, 23RD FLOOR, NEW YORK, NY 10016**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**, whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **6/26/2018**
Original Loan Amount: **$1,999,999.00**
Executed by (Borrower(s)): **PHILIP MICHAEL SCIOLI & MARY NIX SCIOLI**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR PARKSIDE LENDING, LLC, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **581903163** in the Recording District of **Westchester, NY**, Recorded on **7/18/2018**.
**MUNICIPALITY: CITY OF RYE**

Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **49 GREEN AVE, RYE, NEW YORK 10580**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **8/28/2025**

**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **AMY RIFFE**                                            Witness Name: **JOSEPH DAY**
Title: **VICE PRESIDENT**

POA Batch#13857
POA was recorded in Westchester NY on
9/9/2025 Inst#652483325

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of        **FLORIDA**
County of     **PINELLAS**

On **8/28/2025**, before me, **JUSTIN CALITRO**, a Notary Public, personally appeared **AMY RIFFE, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **AMY RIFFE**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **PINELLAS**, State of **FLORIDA.**

Witness my hand and official seal.

(Notary Name): **JUSTIN CALITRO**
My commission expires: **05/03/2027**

**JUSTIN CALITRO**
Notary Public
State of Florida
Comm# HH394424
Expires 5/3/2027

## EXHIBIT "A"
### Assignment Chain

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PARKSIDE LENDING, LLC, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | PHILIP MICHAEL SCIOLI & MARY NIX SCIOLI |
| Origination Balance: | $1,999,999.00 |
| Origination Date: | 6/26/2018 |
| Mortgage Recording Details: | Recorded: 07/18/2018; Book: N/A; Page: N/A; Instrument: 581903163 |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PARKSIDE LENDING, LLC, ITS SUCCESSORS AND ASSIGNS |
| To: | NYMT LOAN TRUST I |
| AOM Dated: | 07/29/2019 |
| AOM Recording Details: | Recorded 08/01/2019; Book: N/A; Page: N/A; Instrument: 592133006 |

| | |
|---|---|
| Assigned From: | NYMT LOAN TRUST I |
| To: | WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I |
| AOM Dated: | 06/17/2020 |
| AOM Recording Details: | Recorded 06/30/2020; Book: N/A; Page: N/A; Instrument: 601813044 |

MODIFICATION
BORROWER: PHILIP MICHAEL SCIOLI & MARY NIX SCIOLI
LENDER: SPECIALIZED LOAN SERVICING LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I
DATE: 08/28/2020
RECORDING DATE: 05/28/2021
INSTR#: 611483212
NEW MONEY AMOUNT: $136,238.47
BALANCE: $2,107,389.28

| | |
|---|---|
| Assigned From: | WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I |
| To: | WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST |
| AOM Dated: | 02/01/2023 |
| AOM Recording Details: | Recorded 02/27/2023; Book: N/A; Page: N/A; Instrument: 630583010 |

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

*652533519ASS0013*

# Westchester County Recording & Endorsement Page

## Submitter Information

Name: Meridian Asset Services
Address 1: 140 Fountain N Pkwy Ste 100
Address 2:
City/State/Zip: Saint Petersburg FL 33716

Phone:
Fax:
Email:
Reference for Submitter:

## Document Details

Control Number: **652533519**
Package ID: 20250910000264001000

Document Type: **Assignment (ASS)**
Document Page Count: **3**    Total Page Count: **4**

## Parties

☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: WILMINGTON SAVINGS FUND SOCIETY FSB | - Other | 1: US BANK TRUST N A | - Other |
| 2: RESIDENTIAL MORTGAGE AGGREGATION TRUST | - Other | 2: RCF 2 ACQUISITION TRUST | - Other |

## Property

☐ Additional Properties on Continuation page

Street Address: 49 GREEN AVE
City/Town: RYE CITY

Tax Designation: 143.11-2-60
Village:

## Cross- References

☐ Additional Cross-Refs on Continuation page

1: 581903163        2:        3:        4:

## Supporting Documents

### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $20.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| RPL 291 Notice Fee: | $0.00 |
| Local Tax Receipt Filing Fee: | $0.00 |
| Total Recording Fees Paid: | **$60.50** |

### Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

### Mortgage Taxes

| | |
|---|---|
| Document Date: | |
| Mortgage Amount: | |
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |

Dwelling Type:        Exempt: ☐
Serial #:

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded:        09/12/2025 at 09:21 AM
Control Number: **652533519**
Witness my hand and official seal

Timothy C. Idoni
Westchester County Clerk

### Record and Return To

☐ Pick-up at County Clerk's office

MERIDIAN ASSET SERVICES LLC
140 FOUNTAIN PARKWAY SUITE 100

ST. PETERSBURG, FL 33716

Prepared By and Return To:

Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

_____ | Space above for Recorder's use _____
Section: **143.11** Lot: **60** Block: **2**

24665060

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST**, whose address is **90 PARK AVENUE, 23RD FLOOR, NEW YORK, NY 10016**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**, whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **6/26/2018**
Original Loan Amount: **$1,999,999.00**
Executed by (Borrower(s)): **PHILIP MICHAEL SCIOLI & MARY NIX SCIOLI**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR PARKSIDE LENDING, LLC, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: **581903163** in the Recording District of **Westchester, NY**, Recorded on **7/18/2018**.
**MUNICIPALITY: CITY OF RYE**

Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **49 GREEN AVE, RYE, NEW YORK 10580**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **8/28/2025**

**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **AMY RIFFE**

Title: **VICE PRESIDENT**

Witness Name: **JOSEPH DAY**

POA Batch#13857
POA was recorded in Westchester NY on
9/9/2025 Inst#652483325

| A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT |
|---|

State of        **FLORIDA**
County of      **PINELLAS**

On **8/28/2025**, before me, **JUSTIN CALITRO**, a Notary Public, personally appeared **AMY RIFFE, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **AMY RIFFE**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **PINELLAS**, State of **FLORIDA.**

Witness my hand and official seal.

(Notary Name): **JUSTIN CALITRO**
My commission expires: **05/03/2027**

**JUSTIN CALITRO**
Notary Public
State of Florida
Comm# HH394424
Expires 5/3/2027

## EXHIBIT "A"
### Assignment Chain

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PARKSIDE LENDING, LLC, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | PHILIP MICHAEL SCIOLI & MARY NIX SCIOLI |
| Origination Balance: | $1,999,999.00 |
| Origination Date: | 6/26/2018 |
| Mortgage Recording Details: | Recorded: 07/18/2018; Book: N/A; Page: N/A; Instrument: 581903163 |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PARKSIDE LENDING, LLC, ITS SUCCESSORS AND ASSIGNS |
| To: | NYMT LOAN TRUST I |
| AOM Dated: | 07/29/2019 |
| AOM Recording Details: | Recorded 08/01/2019; Book: N/A; Page: N/A; Instrument: 592133006 |

| | |
|---|---|
| Assigned From: | NYMT LOAN TRUST I |
| To: | WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I |
| AOM Dated: | 06/17/2020 |
| AOM Recording Details: | Recorded 06/30/2020; Book: N/A; Page: N/A; Instrument: 601813044 |

MODIFICATION
BORROWER: PHILIP MICHAEL SCIOLI & MARY NIX SCIOLI
LENDER: SPECIALIZED LOAN SERVICING LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I
DATE: 08/28/2020
RECORDING DATE: 05/28/2021
INSTR#: 611483212
NEW MONEY AMOUNT: $136,238.47
BALANCE: $2,107,389.28

| | |
|---|---|
| Assigned From: | WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I |
| To: | WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST |
| AOM Dated: | 02/01/2023 |
| AOM Recording Details: | Recorded 02/27/2023; Book: N/A; Page: N/A; Instrument: 630583010 |

**Exhibit "B"**

STATE OF NEW YORK SUPREME COURT
COUNTY OF WESTCHESTER

| | |
|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I** | Index No.: 69477/2023 |

Plaintiff,

vs.

**PHILIP MICHAEL SCIOLI;
MARY NIX SCIOLI;
INTERNAL REVENUE SERVICE;
WESTCHESTER COUNTY CLERK,**

Defendants.

Index No.:  69477/2023

**NOTICE OF ENTRY**

**Mortgaged Premises:**
**49 Green Avenue**
**Rye, (City of Rye) NY  10580**

PLEASE TAKE NOTICE that Judgment in this action – a copy of which is attached hereto – was duly entered in the Office of the Clerk of the County of Westchester on July 3, 2025, in favor of Plaintiff and against Defendants.

Dated:  July 8, 2025

_SP.W_ (signature)

Sean P. Williams, Esq.
DAVIDSON FINK LLP
Attorneys for Plaintiff
400 Meridian Centre Blvd., Suite 200
Rochester, New York 14618
Tel: (585) 760-8218

TO:

MICHAEL H. SCHARTZ, ESQ.
*Attorney for PHILIP MICHAEL SCIOLI*
VIA NYSCEF

MARY NIX SCIOLI
49 Green Avenue
Rye, NY 10580

25-22904-shl    Doc 11-2    Filed 11/20/25    Entered 11/20/25 17:16:46    Exhibits
Pg 52 of 88

WENDY WEATHERS, ESQ.
*Referee*
4 New King Street, Suite 140
White Plains, NY 10604

JOHN E. GURA, JR., ESQ.
Attorney for United States of America O/B/O Internal Revenue Service
VIA NYSCEF

STATE OF NEW YORK SUPREME COURT
COUNTY OF WESTCHESTER

**WILMINGTON SAVINGS FUND SOCIETY, FSB,**
**NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE**         Index No.:
**FOR NYMT LOAN TRUST I**                           69477/2023
                              Plaintiff,

                                                    **AFFIRMATION**
              vs.                                   **OF MAILING**

**PHILIP MICHAEL SCIOLI;**
**MARY NIX SCIOLI;**
**INTERNAL REVENUE SERVICE;**
**WESTCHESTER COUNTY CLERK,**
                              Defendants.

STATE OF NEW YORK)
COUNTY OF MONROE) ss:

        Robert J. Werner_____, affirms that:
        1.      I am over the age of 18 years and I am not a party to this action. I reside in
Rochester, New York.
2.   .  On____7 / 9____, 2025 I served a copy of the Notice of Entry for the Order
Confirming Referee Report and Judgment of Foreclosure and Sale upon the following:

        MARY NIX SCIOLI
        49 Green Avenue
        Rye, NY 10580

        WENDY WEATHERS, ESQ,
        *Referee*
        4 New King Street, Suite 140
        White Plains, NY 10604

by depositing a true copy of said document securely enclosed in postpaid wrappers in the Post
Office Box regularly maintained by the United States Postal Service at 400 Meridian Centre
Blvd, Suite 200, Rochester, New York 14618.

I affirm this 9 day of____July____, 2025, under the penalties of perjury under the
laws of New York, which may include fine or imprisonment that the foregoing is true, and I
understand that this document may be filed in an action or proceeding in a court of law.

IAS Part

At a Term of the Supreme Court, of the State of New York held in and for the County of Westchester, at the Westchester County Courthouse, White Plains, New York, on the __18__ day of ___June___ 2025

PRESENT:    HON.   Thomas Quinones, JSC

JUSTICE OF THE SUPREME COURT

| | |
|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I** | INDEX NO.: 69477/2023 |
| | **ORDER CONFIRMING REFEREE REPORT AND JUDGMENT OF FORECLOSURE AND SALE** |
| Plaintiff, | MORTGAGED PROPERTY: 49 Green Avenue Rye, (City of Rye) NY 10580 |
| -vs- | SBL#: 153.11-2-60 |
| **PHILIP MICHAEL SCIOLI; MARY NIX SCIOLI; INTERNAL REVENUE SERVICE; WESTCHESTER COUNTY CLERK,** | Mortgage Servicer: Newrez LLC d/b/a Shellpoint Mortgage Servicing (fka Specialized Loan Servicing LLC) |
| Defendants. | Mortgage Servicer Phone #: 800-306-6062 |

[Motion #2]

UPON the Summons, Complaint, and Notice of Pendency filed in this action on October 18, 2023, the Notice of Motion dated April 29, 2025, the affirmation of Sean P. Williams, Esq. and the Plaintiff's Affidavit by Mary Monta-Adrovel, Foreclosure Specialist II of Newrez, LLC d/b/a Shellpoint Mortgage Servicing (fka Specialized Loan Servicing, LLC) (hereafter, "Newrez") as servicer for WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I , duly sworn to on May 5, 2024, together with the exhibits annexed thereto, all in support of Plaintiff's motion for a Judgment of Foreclosure and Sale; and

NYSCEF DOC. NO. 78

UPON proof that each of the defendants herein has been duly served with the Summons and Complaint in this action, and either has voluntarily appeared either personally or by an attorney or has not served any answer to the Complaint or otherwise appeared, nor had their time to do so extended; and PHILIP MICHAEL SCIOLI having interposed an answer which answer was stricken by the Court by Order dated January 28st 2025; and it appearing that more than the legally required number of days has elapsed since defendants PHILIP MICHAEL SCIOLI; MARY NIX SCIOLI; INTERNAL REVENUE SERVICE and WESTCHESTER COUNTY CLERK were so served and/or appeared; and Plaintiff having established to the court's satisfaction that a judgment against defendants is warranted; and

UPON the affidavit of mailing reflecting compliance with CPLR §3215(g)(3)(iii); and

UPON proof that non-appearing defendants MARY NIX SCIOLI and WESTCHESTER COUNTY CLERK are not absent; and

UPON a Referee having been appointed to compute the amount due to Plaintiff upon the bond/note and mortgage set forth in the Complaint and to examine whether the mortgaged property can be sold in parcels; and

UPON reading and filing the Report of Wendy M. Weathers, Esq. dated March 19, 2025, showing the sum of $2,581,310.47 due through February 25, 2025 and that the mortgaged property may not be sold in parcels; and

UPON proof of due notice of this motion upon all parties entitled to receive same, and upon all the prior proceedings and papers filed herein; and absent opposition filed,

NOW, on motion by Sean P. Williams, Esq., attorney for Plaintiff, it is hereby

ORDERED, ADJUDGED AND DECREED that the motion is granted; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee's Report be, and the same is, hereby in all respects ratified and confirmed; and it is further

ORDERED, ADJUDGED AND DECREED that the mortgaged property described in the Complaint and as hereafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale, and the costs of this action as provided by the RPAPL be sold, within 90 days of the date of this Judgment, in one parcel, at a public auction at the in the Lobby, Westchester County Courthouse, 111 Dr. Martin Luther King Jr. Boulevard, White (in accordance with the Court's Auction Rules filed simultaneously with the herewith) Plains, NY 10601 , Westchester County, New York, by and under the direction of Wendy M. Weathers, Esq. who is hereby appointed Referee for that purpose; that said Referee give public notice of the time and place of sale in accordance with RPAPL §231 in: ____--------------____

____The Journal News_____; and it is further

ORDERED, ADJUDGED AND DECREED that by accepting this appointment, the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to 36.2(c)("Disqualifications from appointment") and 36.2(d)("Limitations on appointments based upon compensation"); and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall conduct the foreclosure sale only if Plaintiff, its successors and/or assignees, or its representative is present at

the sale or the Referee has received a written bid and Terms of Sale from Plaintiff, its successors and/or assigns, or its representative; and it is further

ORDERED, ADJUDGED AND DECREED that if the Referee does not conduct the sale within 90 days of the date of the judgment, in accordance with CPLR §2004, the time fixed by RPAPL §1351(1) is extended for the Referee to conduct the sale as soon as reasonably practicable; and it is further

ORDERED, ADJUDGED AND DECREED that at the time of sale the Referee shall accept a written bid from the Plaintiff or the Plaintiff's attorney, just as though Plaintiff were physically present to submit said bid, and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall accept the highest bid offered by a bidder who shall be identified upon the court record, and shall require that the successful bidder immediately execute Terms of Sale for the purchase of the property, and pay to the Referee, in cash or certified or bank check, ten percent (10%) of the sum bid, unless the successful bidder is Plaintiff in which case no deposit against the purchase price shall be required; and it is further

ORDERED, ADJUDGED AND DECREED that in the event the first successful bidder fails to execute the Terms of Sale immediately following the bidding upon the subject property or fails to immediately pay the ten percent (10%) deposit as required, the property shall immediately and on the same day be reoffered at auction; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall then deposit the down payment and proceeds of sale, as necessary, in an attorney escrow/IOLA account in his/her own name as Referee, in accordance with CPLR §2609; and it is further

FILED: WESTCHESTER COUNTY CLERK 07/09/2025 11:35 AM INDEX NO. 69477/2023
NYSCEF DOC. NO. 77

25-22904-shl    Doc 11-2    Filed 11/20/25    Entered 11/20/25 17:16:46    Exhibits
Pg 58 of 88

INDEX NO. 69477/2023
NYSCEF DOC. NO. 78    RECEIVED NYSCEF: 06/30/2025

ORDERED, ADJUDGED AND DECREED that after the property is sold, the Referee shall execute a deed to the purchaser, in accordance with RPAPL §1353 and the terms of sale which shall be deemed a binding contract; and it is further

ORDERED, ADJUDGED AND DECREED that in the event a party other than the Plaintiff becomes the purchaser at the sale, the closing of title shall be held no later than 30 days after the date of such sale unless otherwise stipulated by all parties to the sale; and it is further

ORDERED, ADJUDGED AND DECREED that if Plaintiff (or its affiliate, as defined in paragraph (a) of subdivision 1 of section six-1 of the Banking Law) is the purchaser, such party shall place the property back on the market for sale or other occupancy: (a) within 180 days of the execution of the deed of sale, or (b) within 90 days of completion of construction, renovation, or rehabilitation of the property, provided that such construction, renovation, or rehabilitation proceeded diligently to completion, whichever comes first, provided however, that a court of competent jurisdiction may grant an extension for good cause; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee, on receiving the proceeds of such sale, shall forthwith pay therefrom, in accordance with their priority according to law, all taxes, assessments, sewer rents, or water rates, which are, or may become, liens on the property at the time of sale, with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee then deposit the balance of said proceeds of sale in her/his own name as Referee in an attorney escrow/IOLA account and shall thereafter make the following payments in accordance with RPAPL §1354, as follows:

FIRST: The Referee's statutory fees for conducting the sale, in accordance with CPLR §8003(b), not to exceed $750.00 unless the property sells for $50,000.00 or

more or in the event a sale was cancelled or postponed, Plaintiff shall compensate the Referee in the sum of $ 250.00 for each adjournment or cancellation, unless the Referee caused the delay;

SECOND: All taxes, assessments, and water rates that are liens upon the property and monies necessary to redeem the property from any sales for unpaid taxes, assessments, or water rates that have not become absolute, and any other amounts due in accordance with RPAPL §1354(2). Purchaser shall be responsible for interest and penalties due on any real property taxes accruing after the sale. The Referee shall not be responsible for the payment of penalties or fees pursuant to this appointment. The Purchaser shall hold the Referee harmless from any such penalties or fees assessed;

THIRD: The expenses of the sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the report of sale;

FOURTH: The Referee shall then pay to the Plaintiff or its attorney the following:

Amount Due per Referee's Report: $2,581,310.47 with interest at the note rate from September 1, 2020 until February 25, 2025, together with any advances as provided for in the note and mortgage which Plaintiff has made for taxes, insurance, principal, and interest, and any other charges due to prior mortgages or to maintain the property pending consummation of this foreclosure sale, not previously included in the computation, upon presentation of receipts for said expenditures to the Referee, all together with interest thereon pursuant to the note and mortgage, and then with interest

from the date of entry of this judgment at the statutory rate until the date the deed is transferred;

Costs and Disbursements: $2,075.00 adjudged to the Plaintiff for costs and disbursements in this action (add if applicable, as taxed or calculated by the Clerk and inserted herein), with interest at the statutory judgment rate from the date of entry of this judgment;

Additional Allowance: $___n/a_____ is hereby awarded to Plaintiff in addition to costs, with interest at the statutory judgment rate from the date of entry of this judgment, pursuant to CPLR Article 83;

Attorney Fees: $___5,650.00_____ is hereby awarded to Plaintiff as reasonable legal fees herein, with interest at the statutory rate from the date of entry of this judgment;

FIFTH: Surplus monies arising from the sale shall be paid into court by the officer conducting the sale within five days after receipt in accordance with RPAPL §1354(4) and in accordance with local County rules regarding Surplus Monies; and it is further

ORDERED, ADJUDGED AND DECREED that if the Plaintiff is the purchaser of the property, or in the event that the rights of the purchasers at such sale and the terms of sale under this judgment shall be assigned to and be acquired by the Plaintiff, and a valid assignment thereof is filed with said Referee, said Referee shall not require Plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the Plaintiff or its assignee, a deed or deeds of the property sold upon the payment to said Referee of the amounts specified in items marked "First", "Second", and "Third" above; that the Referee shall allow the Plaintiff to pay the

FILED: WESTCHESTER COUNTY CLERK 07/09/2025 11:35 AM          INDEX NO. 69477/2023
NYSCEF DOC. NO. 78                                           RECEIVED NYSCEF: 07/30/2025

amounts specified in "Second" and "Third" above when it is recording the deed; that the balance of the bid, after deducting the amounts paid by the Plaintiff, shall be applied to the amount due Plaintiff as specified in paragraph "Fourth" above; that Plaintiff shall pay any surplus after applying the balance of the bid to the Referee, who shall deposit it in accordance with paragraph "Fifth" above; and it is further

ORDERED, ADJUDGED AND DECREED that all expenses of recording the Referee's deed, including real property transfer tax, which is not a lien upon the property at the time of sale, shall be paid by the purchaser, not by the Referee from sale proceeds, and that any transfer tax shall be paid in accordance with Tax Law 1404; and it is further

ORDERED, ADJUDGED AND DECREED that if the sale proceeds distributed in accordance with paragraphs "First," "Second," "Third," and "Fourth" above are insufficient to pay Plaintiff the Amount Due per the Referee's Report as set forth in paragraph "Fourth" above, Plaintiff may seek to recover a deficiency judgment against PHILIP MICHAEL SCIOLI in accordance with RPAPL §1371 if permitted by law; and it is further

ORDERED, ADJUDGED AND DECREED that the mortgaged property is to be sold in one parcel in "as is" physical order and condition, subject to any condition that an inspection of the property would disclose; any facts that an accurate survey of the property would show; any covenants, restrictions, declarations, reservations, easements, right of way, and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the mortgaged property is located and possible violations of same; any rights of tenants or persons in possession of the subject property; prior liens of record, if any, except those liens addressed in RPAPL §1354; any equity of redemption of the United States of America to redeem property within 120 days from the date of sale; and any rights pursuant to CPLR §317, §2003,

and §5015, or any appeal of the underlying action or additional litigation brought by any

defendant or its successor or assignee contesting the validity of this foreclosure; and it is further

ORDERED, ADJUDGED AND DECREED that the purchaser be let into possession of

the property upon production in hand of the Referee's Deed or upon personal service of the

Referee's deed in accordance with CPLR §308; and it is further

ORDERED, ADJUDGED AND DECREED that the Defendants in this action and all

persons claiming through them and any person obtaining an interest in the property after the

filing of the Notice of Pendency are barred and foreclosed of all right, claim, lien, title, and

interest in the property after the sale of the mortgaged property; and it is further

ORDERED, ADJUDGED AND DECREED that within 30 days after completing the sale

and executing the proper conveyance to the purchaser, unless the time is extended by the court,

the officer making the sale shall file with the clerk a report under oath of the disposition of the

proceeds of the sale in accordance with RPAPL §1355(1) and follow all local County rules

regarding handling of Surplus Monies; and it is further

ORDERED, ADJUDGED AND DECREED that if the purchaser or purchasers at said

sale default(s) upon the bid and/or the terms of sale the Referee may place the property for resale

without prior application to the Court unless Plaintiff's attorneys shall elect to make such

application; and it is further

ORDERED, ADJUDGED AND DECREED that Plaintiff shall serve a copy of this

Judgment with Notice of Entry upon the owner of the equity of redemption, any tenants named

in this action, and any other parties or person entitled to service, including the Referee appointed

herein; and it is further

FILED: WESTCHESTER COUNTY CLERK 07/09/2025 11:35 AM
NYSCEF DOC. NO. 77
INDEX NO. 69477/2023
INDEX NO. 69477/2023
RECEIVED NYSCEF: 06/30/2025

25-22904-shl   Doc 11-2   Filed 11/20/25   Entered 11/20/25 17:16:46   Exhibits
Pg 63 of 88

ORDERED, ADJUDGED AND DECREED that nothing herein shall be deemed to relieve Plaintiff of any obligation imposed by RPAPL §1307 and RPAPL §1308 to secure and maintain the property until such time as ownership of the property has been transferred and the deed duly recorded; and it is further

ORDERED, ADJUDGED AND DECREED that when the Referee files a report of sale, he or she shall concurrently file a Foreclosure Actions Surplus Monies Form; and it is further

ORDERED, ADJUDGED AND DECREED that to ensure compliance herewith, Plaintiff shall file a written report with the court within six months from the date of entry of this judgment stating whether the sale has occurred and the outcome thereof.

Said property is commonly known as 49 Green Avenue, Rye, NY 10580

The legal description of the mortgaged property referred to herein is annexed hereto as Schedule A.

<b>ENTER:</b>

**DATED:**   6/18/2025
White Plains, NY

Hon. Thomas Quinones, <b>J.S.C.</b>

## SCHEDULE A
## LEGAL DESCRIPTION

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Rye, County of Westchester, State of New York, known and designated as Lots 12, 13, 14 and 15 in Block C as shown on a certain map entitled "Map of Peningo Terrace, in the village of Rye, New York, made by J.A. Kirby Company", dated August, 1928 and fled in the Office of the Clerk of the County of Westchester, Division of Land Records, on March 13, 1929 as Map Number 3401 which said Lots and portion of said Lots when taken together are more particularly bounded and described as follows:

BEGINNING at a point at the corner formed by the intersection of the southerly side of Green Avenue with the easterly side of Knollwood Avenue;

RUNNING THENCE along said Green Avenue, South 71 degrees 04 minutes 00 seconds East 100 feet to the division line between lots 15 and 16 in Block C as shown on said map;

THENCE along the division line between Lots 16, 17, 18 and 19 and 15, 14, 13 and 12 in Block C as shown on said map, South 18 degrees 56 minutes 00 seconds west 100 feet to the division line between Lots 11 and 12 in Block C as shown on said map;

THENCE along last mentioned division line, north 71 degrees 04 minutes 00 seconds west 100 feet to the easterly said of Knollwood Avenue;

THENCE along said Knollwood Avenue, north 18 degrees 56 minutes 00 east 100 feet to the point or place of BEGINNING.

## NEW AUCTION RULES FOR THE NINTH JUDICIAL DISTRICT

### EFFECTIVE July 1, 2024

**GENERAL FORECLOSURES**

1. The foreclosure rules currently in place will remain in effect. Please note the following rules with respect to auctions. These new auction rules shall be attached to all Judgments of Foreclosure and Sale issued by the court.

**NOTICE TO BIDDERS**

2. Auctions will be conducted in the following locations:

Dutchess County: Auctions will be held in the rear lobby of the Dutchess County Courthouse. Foreclosure paperwork may be completed in the rear lobby when the sale is completed.

Orange County: Auctions will be held in the lobby area of Floor 2, Div. 3 of the Orange County Courthouse. Room 3212 is available if additional space is needed. Foreclosure paperwork may be completed in Conference Room 3209 when the sale is completed.

Putnam County: Auctions will take place in the jury assembly room located in the Putnam County Courthouse. Foreclosure paperwork may be completed in the jury lounge room following the sale.

Rockland County: Auctions will take place in the Rockland County Courthouse in the landing above the vestibule between Courtrooms One and Two. Pursuant to Administrative Order 54/24, remote bidding has been authorized for Rockland County. However, all auctions, even remote-eligible auctions, will still take place in-person, at the location designated herein, and will still be conducted and supervised by the Referee.

In a remote bidding eligible auction, where remote bidding has been requested by plaintiff in the proposed Judgment of Foreclosure and Sale-REMOTE BIDDING [See template at https://www.nycourts.gov/forms/foreclosure/pdfs/JFS-with-Remote-Bidding.docx] and authorized by the court in the Judgment of Foreclosure and Sale, plaintiff may retain the services of a remote bidding technology provider for those properties scheduled to be auctioned on or after July 1, 2024.

Remote bidding will be available for properties where the foreclosing party has engaged such a remote bidding technology provider to provide marketing and auction services. In those cases where a remote bidding provider has been retained, a representative thereof will appear at the courthouse for the auction and shall be permitted to use an electronic tablet to collect, verify and relay bids

1

in real time during the auction.

Where a plaintiff seeks to retain a remote bidding technology provider, the proposed Judgment of Foreclosure and Sale shall make the necessary references to remote bidding, as set forth more fully in the UCS' Judgment of Foreclosure and Sale for Remote Bidding template, [which can be found at https://www.nycourts.gov/forms/foreclosure/pdfs/JFS-with-Remote-Bidding.docx] or as otherwise ordered by the court. No remote-bidding eligible auction may take place unless authorized by the Judgment of Foreclosure and Sale.

Once the sale concludes, the successful bidder and Referee may gather in Conference Room 206 on the second floor next to the Chief Clerk's Office to complete the foreclosure paperwork. If the highest bid comes from a remote bidder, the remote bidding provider shall facilitate the winning bidder's execution of all required documentation.

Westchester County: Auctions will be held in the lobby area located on the first floor of the Courthouse. A courtroom will be made available if additional space is needed. Foreclosure paperwork may be completed in the same location following the sale.

3. There shall be a maximum of five auctions daily: three (3) in the morning and two (2) in the afternoon. The first shall commence at 9:30 am, the second at 10:30am, the third at 11:30am, the fourth at 2:30pm and the fifth at 3:30pm. (The number of auctions per day and the time of day may differ by County).

4. It is the responsibility of the bidder to acquaint himself/herself with the property, any encumbrances thereon, and the Terms of the Sale before placing a bid and to be certain that adequate funds are available to make good the bid.

5. All bidders must have proof of identification and will be required to state their names and addresses on the record at the time the bid is made.

6. A successful bidder must have in his/her possession at the time of the bid the full 10% of the sum bid, in cash or certified bank check to be made payable to the Referee.

In Rockland County only, if the highest bid comes from a remote bidder in a remote-eligible auction, the Referee shall defer collection of a deposit as long as the remote bidding provider provides proof of sufficient funds thereof. This proof of funds may be in the form of a winning remote bidder's escrow account statement as of the date of the auction. The deposit MUST then be transferred into the Referee's trust account within one (1) business day of the conclusion of the auction. The Referee shall make available their wire transfer information to the remote bidding provider for this purpose.

7. No auction will be deemed final until the full 10% deposit has been paid to the

2

Referee and the Terms of Sale Documents have been signed, which must be done in the courthouse immediately following the auction, except as set forth above for a winning remote bidder in a remote-eligible auction.

8. After the auction is completed, the Referee and successful bidder, if needed, shall be allowed to use designated court space to complete the necessary paperwork.

9. If a successful bidder fails to immediately pay the deposit or in the event of a winning remote bidder in a remote-eligible auction, within one (1) business day of the conclusion of the auction, and sign the Terms of Sale documents, the property shall be returned to auction immediately.

**NOTICE TO REFEREES**

10. Auctions shall be scheduled by appointment only utilizing the following applicable email address:

Dutchess County: DutchessAuctions@NYCourts.gov

Orange County: OrangeAuctions@NYCourts.gov

Putnam County: PutnamAuctions@NYCourts.gov

Rockland County: RocklandAuctions@NYCourts.gov

If remote bidding is authorized by the court, when seeking to schedule a remote-bidding eligible auction (via email to RocklandAuctions@NYCourts.gov), the Referee and/or plaintiff's representative must notify the court of their intention to retain a remote bidding technology provider.

Westchester County: WestchesterAuctions@NYCourts.gov

11. The Referee shall not schedule any foreclosure sale without prior approval from the Clerk's Office. All auction sales shall be scheduled through the clerk's office. The auction calendar shall be published on OCA/the Court's website. **The Clerk's Office shall be solely responsible for scheduling, and the Referee shall coordinate the date and time of the auction with the Clerk's Office. If the auction is canceled for whatever reason, the Referee shall promptly notify the Clerk's Office.**

12. The Referee and all interested parties, including a representative from a remote bidding provider in a remote-eligible auction in Rockland County, must be present at the designated auction location indicated in the Order of the Court on the published date promptly at the scheduled time. At the completion of the auction, the Referee shall direct all attendees at that auction to vacate the auction location promptly upon confirmation of the sale.

13. The Referee shall conspicuously post the Terms of Sale, including any known

3

encumbrances, in a designated area of the auction location at least 30 minutes before the auction commences.

14. The Referee shall accept either (1) cash, or (2) certified bank check made payable to the Referee.  In the case of a remote-eligible auction where the winning bidder is a remote bidder, a deposit MUST be transferred into the Referee's trust account within one (1) business day of the conclusion of the auction.

15. At the conclusion of the auction, the Referee shall notify the Clerk's Office of the outcome of the sale.

**SURPLUS FUNDS**

16. If there is a potential for Surplus Funds, the Referee shall notify the clerk who shall enter the following information into UCMS (Foreclosure Screen): the sales price, amount awarded in the final Judgment of Foreclosure, and upset price.

17. When the sales price exceeds the greater of the judgment amount or upset price, the clerk will provide the Referee conducting the sale a Surplus Money Form to be completed.

18. The form shall include the following information: a case caption, name, address and telephone number of the Referee, the plaintiff's representative and the purchaser, a judgment amount, and the upset and sale price. The form must be signed by the Referee, plaintiff's representative and purchaser of the foreclosed property.

19. The Referee will complete the form at the auction, and deliver the signed form to the court clerk, who will subsequently provide it to the County Clerk.

20. All cases with a potential for Surplus Funds will be calendared for a control date before the IAS Judge or his/her designee, no later than six months after the auction (this is a non-appearance part). On the control date, the Clerk will consult the County Clerk Minutes. If Surplus Funds have been deposited or the Report of Sale indicates a deficiency, the appearance will be appropriately marked. In the event that no Report of Sale has been filed, but there are motions pending, the Clerk will adjourn the case to a date beyond the motion return date in the IAS Part. If a Report of Sale has not been filed and no motions are pending, the case will be adjourned to the IAS Judge for further proceedings, as necessary, and the Referee shall be notified.

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR NYMT LOAN TRUST I**

Plaintiff,

-vs-

**PHILIP MICHAEL SCIOLI;
MARY NIX SCIOLI;
INTERNAL REVENUE SERVICE;
WESTCHESTER COUNTY CLERK,**

Defendants.

INDEX NO.: 69477/2023

**COSTS OF PLAINTIFF**

MORTGAGED PROPERTY:
49 Green Avenue
Rye, (City of Rye) NY 10580

SBL#: 153.11-2-60

## COSTS

| | | |
|---|---|---|
| Costs before Note of Issue - CPLR § 8201(1) | | $200.00 |
| Allowance by statute - CPLR § 8302(a)(b) | | $150.00 |
| First $200.00 at 10% | $20.00 | |
| Next $800.00 at 5% | $40.00 | |
| Next $2000.00 at 2% | $40.00 | |
| Next $5000.00 at 1% | $50.00 | |
| Additional Allowance - CPLR §8302(d) | | $50.00 |
| **Subtotal** | | **$400.00** |

## FEES AND DISBURSEMENTS

| | | |
|---|---|---|
| Fee for index number and Notice of Pendency - | CPLR §8018(a) | $435.00 |
| Referee's fee to compute, per order of the court - | CPLR §8003(a) | $350.00 |
| Paid for searches - | CPLR §8301(a)(10) | $75.00 |
| Serving copy of Summons and Complaint - | CPLR §8301(d) | $630.00 |
| Request for judicial intervention - | CPLR §8020(a) | $95.00 |
| Motion fees - | CPLR §8020(a) | $90.00 |
| **Subtotal** | | **$1,675.00** |
| **Total** | | **$2,075.00** |

## ATTORNEY'S AFFIRMATION

The undersigned, Sean P. Williams, Esq., pursuant to CPLR §2106 and under penalties of perjury affirms as follows:

That I am the attorney of record for the Plaintiff in the above-captioned action, that the foregoing disbursements have been incurred in this action and are reasonable in amount, and that the copies of documents or papers charged for herein were actually and necessarily obtained.

DATED:    April 29, 2025
          Monroe County, New York

_____
Sean P. Williams, Esq.
DAVIDSON FINK LLP
Attorneys for Plaintiff
400 Meridian Centre Blvd., Ste. 200
Rochester, New York 14618
585-546-6448

FILED: WESTCHESTER COUNTY CLERK 07/09/2025 11:35 AM INDEX NO. 69477/2023
NYSCEF DOC. NO. 77

25-22904-shl    Doc 11-2    Filed 11/20/25    Entered 11/20/25 17:16:46    Exhibits
Pg 71 of 88

INDEX NO. 69477/2023
RECEIVED NYSCEF: 06/30/2025
NYSCEF DOC. NO. 78

Closing USA

## INVOICE

**Invoice #: 821481**
**Invoice Date: 1/18/2022**
**File Number: DS220003017**

**To:**
Davidson Fink, LLP
28 East Main Street, Suite 1700
Rochester, NY 14614

**From:**
Closing USA, LLC
7665 Omnitech Place
Victor, NY 14564
(585) 433-7100

| Description | Amount | Qty | Total |
|---|---|---|---|
| SL01-64857a – Scioli 49 Green Avenue Rye, NY 10580 | | | |
| Tax Search | $75.00 | 1 | $75.00 |

| | |
|---|---|
| **Non Taxable** | $0.00 |
| **Taxable** | $75.00 |
| **Sales Tax** 8% | $6.00 |
| **Grand Total** | **$81.00** |

**Loan Amount:**

**Purchase Price:**

*Please Remit To:*
Closing USA, LLC
7665 Omnitech Place
Victor, NY 14564
(585) 433-7100

*Thank you!*

FILED: WESTCHESTER COUNTY CLERK 07/09/2025 11:35 AM INDEX NO. 69477/2023
NYSCEF DOC. NO. 78

# ProVest LLC

7702 Woodland Center Blvd, Suite 100
Tampa, FL 33614
Phone: 813-877-2844 Email: accounts_receivable@provest.us

**11/8/2023**

## INVOICE                    INVOICE NUMBER:            **6944788**

| CUSTOMER | BILLING INFORMATION | |
|---|---|---|
| DAVIDSON FINK LLP<br>400 MERIDIAN CENTRE BLVD<br>SUITE 200<br>ROCHESTER, NY 14618<br><br><br><br><br>Sarah E.  Barker | FILE NUMBER: | SL01-64857a |
| | MAIN DEFENDANT: | PHILIP MICHAEL SCIOLI |
| | PLAINTIFF: | WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR RESIDENTIAL MORTGAGE AGGREGATION TRUST |
| | COUNTY: | Westchester |
| | COURT CASE NUMBER: | 69477/2023 |
| | FILE TYPE: | Standard |
| | DOCUMENT TYPE: | |

| STATUS DATE | DESCRIPTION | TAX | CHARGE | TOTAL |
|---|---|---|---|---|
| **PHILIP MICHAEL SCIOLI** | | | | |
| 10/23/2023 | ISSUE | $0.00 | $0.00 | $0.00 |
| 10/23/2023 | Postal Requested | $0.00 | $0.00 | $0.00 |
| 10/23/2023 | Received Issued Summons | $0.00 | $0.00 | $0.00 |
| 10/23/2023 | POSTAL MAILED | $0.00 | $25.00 | $25.00 |
| 10/25/2023 | AWAITING SUMMONS TO REROUTE | $0.00 | $0.00 | $0.00 |
| 10/25/2023 | ATTEMPTING SERVICE | $0.00 | $105.00 | $105.00 |
| | 49 Green Avenue RYE, (CITY OF RYE),  NY 10580 | | | |
| 11/2/2023 | SERVED AWAIT RETURN | $0.00 | $0.00 | $0.00 |
| 11/2/2023 | SUITABLE SERVICE | $0.00 | $0.00 | $0.00 |
| 11/3/2023 | Investigation | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FILED STAMPED AFFIDAVIT | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | MOTOR VEHICLE SEARCH | $0.00 | $55.00 | $55.00 |
| 11/7/2023 | Investigation | $0.00 | $0.00 | $0.00 |
| 11/8/2023 | FINALIZED | $0.00 | $0.00 | $0.00 |
| **MARY NIX SCIOLI** | | | | |
| 10/23/2023 | ISSUE | $0.00 | $0.00 | $0.00 |
| 10/23/2023 | Postal Requested | $0.00 | $0.00 | $0.00 |
| 10/23/2023 | Received Issued Summons | $0.00 | $0.00 | $0.00 |
| 10/23/2023 | POSTAL MAILED | $0.00 | $25.00 | $25.00 |
| 10/25/2023 | AWAITING SUMMONS TO REROUTE | $0.00 | $0.00 | $0.00 |
| 10/25/2023 | ATTEMPTING SERVICE | $0.00 | $105.00 | $105.00 |
| | 49 Green Avenue RYE, (CITY OF RYE),  NY 10580 | | | |
| 11/2/2023 | SERVED AWAIT RETURN | $0.00 | $0.00 | $0.00 |
| 11/2/2023 | SERVICE COMPLETE | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FILED STAMPED AFFIDAVIT | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FINALIZED | $0.00 | $0.00 | $0.00 |
| **UNITED STATES OF AMERICA O/B/O INTERNAL REVENUE SERVICE** | | | | |
| 10/23/2023 | PENDING | $0.00 | $0.00 | $0.00 |
| 10/31/2023 | Mailing Sent | $0.00 | $0.00 | $0.00 |
| 11/3/2023 | FILED STAMPED AFFIDAVIT OF MAILING | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FINALIZED | $0.00 | $0.00 | $0.00 |
| 10/23/2023 | ISSUE | $0.00 | $0.00 | $0.00 |
| 10/23/2023 | Received Issued Summons | $0.00 | $0.00 | $0.00 |
| 10/25/2023 | AWAITING SUMMONS TO REROUTE | $0.00 | $0.00 | $0.00 |

# ProVest LLC

**11/8/2023**

7702 Woodland Center Blvd, Suite 100
Tampa, FL 33614
Phone: 813-877-2844 Email: accounts_receivable@provest.us

| INVOICE | INVOICE NUMBER: | | | 6944788 |
|---|---|---|---|---|
| 10/25/2023 | ATTEMPTING SERVICE | $0.00 | $105.00 | $105.00 |
| | 86 CHAMBERS STREET NEW YORK, NY 10007 | | | |
| 10/27/2023 | SERVED AWAIT RETURN | $0.00 | $0.00 | $0.00 |
| 10/27/2023 | COMPLETE | $0.00 | $0.00 | $0.00 |
| 10/31/2023 | CREATED AFFIDAVIT | $0.00 | $0.00 | $0.00 |
| 11/2/2023 | AWAITING SIGNED AFFIDAVIT | $0.00 | $0.00 | $0.00 |
| 11/6/2023 | RECEIVED ORIGINAL | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FILED STAMPED AFFIDAVIT | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FINALIZED | $0.00 | $0.00 | $0.00 |

**WESTCHESTER COUNTY CLERK'S OFFICE**

| 10/23/2023 | ISSUE | $0.00 | $0.00 | $0.00 |
|---|---|---|---|---|
| 10/23/2023 | Received Issued Summons | $0.00 | $0.00 | $0.00 |
| 10/25/2023 | AWAITING SUMMONS TO REROUTE | $0.00 | $0.00 | $0.00 |
| 10/25/2023 | ATTEMPTING SERVICE | $0.00 | $105.00 | $105.00 |
| | 110 DR MARTIN LUTHER KING JR. BOULEVARD WHITE PLAINS, NY 10601 | | | |
| 10/27/2023 | SERVED AWAIT RETURN | $0.00 | $0.00 | $0.00 |
| 10/27/2023 | SERVICE COMPLETE | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FILED STAMPED AFFIDAVIT | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FINALIZED | $0.00 | $0.00 | $0.00 |

**NO DOES**

| 10/23/2023 | ISSUE | $0.00 | $0.00 | $0.00 |
|---|---|---|---|---|
| 10/23/2023 | Received Issued Summons | $0.00 | $0.00 | $0.00 |
| 10/25/2023 | AWAITING SUMMONS TO REROUTE | $0.00 | $0.00 | $0.00 |
| 10/25/2023 | ATTEMPTING SERVICE | $0.00 | $105.00 | $105.00 |
| | 49 Green Avenue RYE, (CITY OF RYE), NY 10580 | | | |
| 11/2/2023 | NON-SERVICE AWAIT RETURN | $0.00 | $0.00 | $0.00 |
| 11/2/2023 | NON-SERVICE | $0.00 | $0.00 | $0.00 |
| 11/3/2023 | Investigation | $0.00 | $0.00 | $0.00 |
| 11/3/2023 | Investigation | $0.00 | $0.00 | $0.00 |
| 11/7/2023 | FINALIZED | $0.00 | $0.00 | $0.00 |

**MISCELLANEOUS CHARGES**

| | | | |
|---|---|---|---|
| | SUBTOTAL: | | $630.00 |
| | TOTAL MISC. CHARGES: | | $0.00 |
| | PREPAID: | | $0.00 |
| TOTAL MISC. CHARGES: $0.00 | **TOTAL AMOUNT DUE:** | | **$630.00** |

**PLEASE REMIT PAYMENT TO:**
ProVest, LLC
PO Box 25096
Tampa, FL 33622

**Exhibit "C"**

REFEREE'S NOTICE OF SALE IN FORECLOSURE
SUPREME COURT - COUNTY OF WESTCHESTER
WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY, BUT SOLELY AS TRUSTEE FOR
NYMT LOAN TRUST I, Plaintiff - against - PHILIP MICHAEL SCIOLI, et al Defendant(s).
Pursuant to a Judgment of Foreclosure and Sale entered on July 3, 2025. I, the undersigned
Referee will sell at public auction in the lobby of the Westchester County Supreme Court, 111
Dr. Martin Luther King Jr. Blvd., White Plains, N.Y. on the 25th day of September, 2025 at 9:30
AM. All that certain plot, piece or parcel of land, with the buildings and improvements thereon
erected, situate, lying and being in the City of Rye, County of Westchester, State of New York.

Premises known as 49 Green Avenue, Rye, (City of Rye) NY 10580.

(SBL#: 153.11-2-60)
Approximate amount of lien $2,581,310.47 plus interest and costs.
Premises will be sold subject to provisions of filed judgment and terms of sale.
Index No. 69477/2023. Wendy Marie Weathers, Esq., Referee.
Davidson Fink LLP

Attorney(s) for Plaintiff
400 Meridian Centre Blvd, Ste 200
Rochester, NY 14618
Tel. 585/760-8218
Dated: July 23, 2025

**During the COVID-19 health emergency, bidders are required to comply with all governmental
health requirements in effect at the time of sale including but not limited to, wearing face
coverings and maintaining social distancing (at least 6-feet apart) during the auction, while
tendering deposit and at any subsequent closing. Bidders are also required to comply with the
Foreclosure Auction Rules and COVID-19 Health Emergency Rules issued by the Supreme
Court of this County in addition to the conditions set forth in the Terms of Sale.**

**Exhibit "D"**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re:                                                           Chapter 11

Philip M. Scioli,                                                Case No. 25-22904-shl

                              Debtor.                            Hon. Sean H. Lane

-------------------------------------------------------------x

---

## RELIEF FROM STAY – REAL ESTATE AND COOPERATIVE APARTMENTS

---

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: 49 GREEN AVE, RYE, NEW YORK 10580

2. LENDER NAME: SELENE FINANCE LP AS SERVICER FOR U.S. BANK TRUST NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST

3. MORTGAGE DATE: June 26, 2018

4. POST-PETITION PAYMENT ADDRESS: Selene Finance LP, Attn: Bk Dept., 3501 Olympus Boulevard, Suite 500, Dallas, Texas 75019

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: $2,677,112.70 (as of October 17, 2025)
*(THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)*

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $2,750,000.00

7. SOURCE OF ESTIMATED MARKET VALUE: BPO

## STATUS OF THE DEBT AS OF THE PETITION DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

| | | |
|---|---|---|
| A. | TOTAL: | **$2,670,473.21** |
| B. | PRINCIPAL: | **$2,105.245.90** |
| C. | INTEREST: | **$340,524.86** |
| D. | ESCROW (TAXES AND INSURANCE): | **$225,856.54** |
| E. | FORCED PLACED INSURANCE EXPENDED BY MOVANT: | **$0.00** |
| F. | PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): | **$0.00** |
| G. | PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): | **$50.50** |

9. CONTRACT INTEREST RATE: 3.25000%
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A.)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: Recoverable Bal. $9,649.19

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A.)*

## AMOUNT OF POST-PETITION DEFAULT AS OF OCTOBER 17, 2025

11. DATE OF RECEIPT OF LAST PAYMENT: N/A

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: N/A

13.    POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 10/1/2025 | $12,283.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/1/25 | $12,283.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL:** | $24,566.72 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

| | |
|---|---|
| A. TOTAL: | **$1,549.00** |
| B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION: | **$1,350.00** |
| C. FILING FEE IN CONNECTION WITH THIS MOTION: | **$199.00** |
| D. OTHER POST-PETITION ATTORNEYS' FEES: | **$0.00** |
| E. POST-PETITION INSPECTION FEES: | **$0.00** |
| F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES: | **$0.00** |
| F. FORCED PLACED INSURANCE EXPENDED BY MOVANT: | **$0.00** |

15. AMOUNT HELD IN SUSPENSE BY MOVANT:  ($10,853.78)

16.    OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: N/A

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A ___*

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (COMPOSITE EXHIBIT A.)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (COMPOSITE EXHIBIT A.)

(3)    COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (COMPOSITE EXHIBIT A.)

# DECLARATION AS TO BUSINESS RECORDS

I, __Christine Le__ , THE ___Bankruptcy Specialist___ OF __Selene Finance, LP__ THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1 ,2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS

SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR

PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT Jacksonville FL
ON THIS 20 DAY OF November , 2025

NAME: Christine Le
TITLE: Bankruptcy Specialist
_ MOVANT: Selene Finance, LP

3501 Olympus Blvd, 5th Floor
Coppell, TX 75019

# DECLARATION

I, _____Christine Le_____, THE _____**Bankruptcy Specialist**_____ OF

<u>Selene Finance, LP</u>, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF

PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT     Jacksonville **FL**

ON THIS 20 DAY OF November , 20 25

NAME: _____Christine Le_____

TITLE: ___**Bankruptcy Specialist**___

_ MOVANT: Selene Finance, LP

3501 Olympus Blvd, 5th Floor
Coppell, TX 75019

**Exhibit "E"**



**Asset Val** — Valuation Solutions

| Address: 49 Green Ave, Rye, NY, 10580 | | | | Loan#: | Order ID: |
|---|---|---|---|---|---|
| Borrower's Name | SCIOLI | | | Occupancy | Occupied |
| Inspection Type | Exterior | Client | Selene Finance LP | Project Name | |
| Order Date | 11/03/2025 | Inspection Date | 11/05/2025 | Completion Date | 11/06/2025 |

## RED FLAGS

| RED FLAGS | RED FLAGS | RED FLAGS | RED FLAGS | RED FLAGS |
|---|---|---|---|---|
| [x] None | [ ] Damaged/Poor Cond | [ ] Not Secure | [ ] Construction | [ ] Natural Disaster |
| [ ] Environmental | [ ] Boarded | [ ] Safety Concerns | [ ] Zoning | [ ] Vandalism |
| [ ] Subject Not Visible | [ ] Illegal Units | [ ] Emergency Repairs | [ ] Stigma | [ ] Other/Repairs |

## Subject Recent Listing History

| | | | |
|---|---|---|---|
| Last Known Sale Date | 12/02/2011 | Last Known Sale Price | $1,872,500 |
| Listed in Last 36 Months | No | Status | |
| Original List Date | | Original List Price | |
| DOM | | Current List Price | |
| Listing Agent | | Listing Agent Phone | |

**CONDITION** — **AVERAGE**

### Market Information

| Value Trend | 4% | Current Market Conditions | Improving |
|---|---|---|---|
| | | Marketing Time Trend | Stable |
| | 12 months | REO Trend | Decreasing |

## Subject Property Information

| | | | | | |
|---|---|---|---|---|---|
| Location | Suburban | Assessor Market Value | $2,706,350 | County | Westchester |
| Fair Market Rent | $15,000 | Taxes Current? | Yes | APN | |
| Zoning Code | R4 | Zoning Compliance | Legal | Zoning Description | Residential |
| Current Use | Residential | Best Use | Yes | Explain | |

| HOA | No | HOA Name | | HOA Contact | |
|---|---|---|---|---|---|
| Fee | /mo | Fees Current? | | Delinquent Amt - | HOA Phone |
| Fees Include | [ ] Insurance | [ ] Landscaping | [ ] Pool | [ ] Tennis | [ ] Other: |
| Known Litigation | | Explain - | | | |

## Subject and Comparable Sales and Listings Characteristics

| Attribute | Subject | Comp Sale 1 | Comp Sale 2 | ✔ Comp Sale 3 | Comp List 1 | Comp List 2 | ✔ Comp List 3 |
|---|---|---|---|---|---|---|---|
| Address | 49 Green Ave | 25 Ridgeland Ter | 71 Oakland Beach Ave | 2 Robert Crisfield Pl | 71 Apawamis Ave | 5 Stoneycrest Rd | 95 Dogwood Ln |
| Unit | - | - | - | - | - | - | - |
| City | Rye | Rye | Rye | Rye | Rye | Rye | Rye |
| State, Zip | NY, 10580 | NY, 10580 | NY, 10580 | NY, 10580 | NY, 10580 | NY, 10580 | NY, 10580 |
| Proximity | | 0.81 Miles | 0.77 Miles | 0.23 Miles | 1.19 Miles | 1.56 Miles | 2.42 Miles |
| Property Type | SF-Detached | SF-Detached | SF-Detached | SF-Detached | SF-Detached | SF-Detached | SF-Detached |
| Info Source | Tax/Assessor | MLS; 834179 | MLS; 816529 | MLS; 862001 | MLS; 892626 | MLS; 918123 | MLS; 837787 |
| Condition | Average | Excellent | Good | Average | Average | Good | Average |
| GLA (Abv Grade) | 2,991 | 3,107 | 3,267 | 2,762 | 2,597 | 3,346 | 2,949 |
| # Rooms/Bed/Bath | 10  5  3.1 | 10  5  4.1 | 9  5  4.1 | 9  4  3.1 | 8  4  2.1 | 10  5  2.1 | 9  5  2.1 |
| Basement | Full | Full | Full | Full | None | Full | Partial |
| Basement Sq.Ft. | 800 | 700 | 800 | 1,600 | | 700 | 400 |
| Basement Fin% | 100 | 100 | 100 | 100 | 0 | 100 | 100 |
| Basement in GLA | No | No | No | No | No | No | No |
| Lot Size | 10,019 Sq.Ft. | 4,792 Sq.Ft. | 10,576 Sq.Ft. | 11,761 Sq.Ft. | 15,551 Sq.Ft. | 9,148 Sq.Ft. | 23,958 Sq.Ft. |
| Year Built | 1983 | 2025 | 1968 | 1984 | 1961 | 1968 | 1909 |
| Garage/Carport | Attached | Attached | Attached | Attached | Attached | Attached | None |
| # of Cars | 2 | 1 | 2 | 2 | 2 | 2 | 0 |
| Parking | Driveway | Driveway | Driveway | Driveway | Driveway | Driveway | Driveway |
| View | Residential | Residential | Residential | Residential | Residential | Residential | Residential |
| View Comparability | | Equal | Equal | Equal | Inferior | Equal | Equal |
| Waterfront | No | No | No | No | No | Yes | No |
| Style | Colonial | Colonial | Colonial | Colonial | Split-Level | Colonial | Colonial |
| Construction | Framed | Framed | Block | Framed | Framed | Framed | Framed |
| HOA Fees | $0 /mo | $0 /mo | $0 /mo | $0 /mo | $0 /mo | $0 /mo | $0 /mo |
| Design & Appeal | | Equal | Equal | Equal | Inferior | Equal | Superior |
| Pool | No | No | No | No | No | No | No |
| Gated | No | No | No | No | No | No | No |
| Waste Disposal | Public Sewer | Public Sewer | Public Sewer | Public Sewer | Public Sewer | Public Sewer | Public Sewer |
| Water Source | Public | Public | Public | Public | Public | Public | Public |
| Fireplace | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Finance Type | | Conventional | Conventional | Conventional | Conventional | Conventional | Conventional |
| Sale Type | | Owner/Resale | Owner/Resale | Owner/Resale | Owner/Resale | Owner/Resale | Owner/Resale |
| Original List Date | | 03/13/2025 | 01/23/2025 | 05/16/2025 | 07/27/2025 | 09/30/2025 | 05/30/2025 |
| DOM | | 4 | 8 | 11 | 10 | 8 | 88 |
| Original List Price | | $1,999,999 | $2,595,000 | $2,485,000 | $1,975,000 | $2,450,000 | $2,800,000 |
| LP at Sale/Listing Status | | $1,999,999 | $2,595,000 | $2,485,000 | Under Contract | Under Contract | Under Contract |
| **Sale/Current List Price** | | **$2,200,000** | **$2,595,000** | **$2,800,000** | **$1,975,000** | **$2,450,000** | **$2,800,000** |
| Sale Date | | 05/02/2025 | 06/13/2025 | 07/18/2025 | | | |
| # Price Changes | | 0 | 0 | 0 | 0 | 0 | 0 |
| $/Sq.Ft. | $919 | $708 | $794 | $1,014 | $760 | $732 | $949 |
| Sales Concessions | | $0 | $0 | $0 | | | |

## Price Estimates

| | | | |
|---|---|---|---|
| As-is 90-120 Day Probable Sale Price | $2,750,000 | Repaired 90-120 Day Probable Sale Price | $2,750,000 |
| As-is 90-120 Day Probable List Price | $2,850,000 | Repaired 90-120 Day Probable List Price | $2,850,000 |
| Probable Quick Sale Price | $2,600,000 | Quick Sale Discount % | 5.45 % |
| Estimated Lot Value Low | $650,000 | Estimated Lot Value High | $800,000 |

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED

www.AssetVal.com - (800) 560-7350



| Address: 49 Green Ave, Rye, NY, 10580 | | | | Loan#: | | Order ID: | |
|---|---|---|---|---|---|---|---|
| Borrower's Name | SCIOLI | | | Occupancy | | Occupied | |
| Inspection Type | Exterior | Client | Selene Finance LP | Project Name | | | |
| Order Date | 11/03/2025 | Inspection Date | 11/05/2025 | Completion Date | | 11/06/2025 | |

## Comparable Sales and Listings Remarks

**Comp Sale 1 Agent Remarks:**

49 Green Ave (Older, larger lot, $\approx 3,000$ sq ft, 1983 build) is likely valued higher due to its size and $\approx 10,000$ sq ft lot. 25 Ridgeland Ter (Newer, smaller lot, $\approx 3,100$ sq ft, 2025 new construction) sold for $2.2

**Comp Sale 1 MLS Remarks:**

Experience the best of Rye living in this delightful new construction home, thoughtfully designed by an experienced local builder. Situated on a private road, this home offers unparalleled conveniencewalk or bike to town, schools, beach, stores & more. From the inviting front porch to the sun-drenched interiors, this home exudes modern comfort. The open-concept layout features large windows, high ceilings, a sleek, modern kitchen w/center island, stainless appliances, quartz counters, stylish subway tile backsplash & large dining area that flows seamlessly into the family room w/gas fireplace. Upstairs, the primary suite boasts a soaring vaulted ceiling, a generous custom WIC & marble bath. The 2nd floor also features a bedroom w/ensuite bath, 2 add'l bedrooms, a well-appointed hall bath & a convenient laundry room. The finished lower level provides a versatile recreation room, bedroom and full bath. Outdoor living is just as inviting w/level yard, stone patio, large Belgium block lined driveway & a back gate for easy access. Highlights include a mudroom, generator, irrigation system and fine craftsmanship throughout.

**Comp Sale 2 Agent Remarks:**

49 Green Ave (st., 5/3.5, 3K sf, 1983 build) has a similar size and lot as 71 Oakland Beach Ave (Sold $2.6M, 5/4.5, 3.3K sf, 1968 build, renovated 2024). The subject's higher estimated value reflects better street appeal and higher tax a

**Comp Sale 2 MLS Remarks:**

Welcome to 71 Oakland Beach Avenue! This stunning, recently-completed home offers the epitome of modern comfort and style. Spread out and enjoy ample space in this expansive 5 bedroom, and four and a half bathroom home, meticulously renovated for today's lifestyle. Prepare to be captivated by the exquisite finishes throughout, from the gleaming hardwood floors to the custom cabinetry and designer fixtures, no detail has been overlooked. Delight your inner chef in the gourmet kitchen featuring top-of-the-line Sub-Zero appliances, quartz countertops, and an abundance of storage space, making meal prep a breeze. Bask in natural light streaming through Marvin windows, illuminating the interior with warmth and inviting ambiance, creating a serene retreat you'll love coming home to. Cozy up by one of two fireplaces on chilly evenings, or unwind in the luxurious primary suite, complete with a spa-like ensuite bathroom and outfitted walk-in closet. With high-end finishes and thoughtful touches at every turn, this home offers a truly elevated living experience. Situated on a generous 1/4 acre of land, you will find plenty of outdoor space to relax, play, and entertain, with a beautifully landscaped yard and large deck, perfect for summer barbecues and gatherings. An easy stroll to Rye City Schools, fields, courts and beach, this one is hard to top. Don't miss the chance to make this dream home yours today.

**Comp Sale 3 Agent Remarks:**

49 Green Ave (Older, larger lot, 5/3.5, 3K sf, 1983 build) is likely valued higher  due to its superior lot size and location. 2 Robert Crisfield Pl (Sold $2.8M, 4/3.5, 2.7K sf, 1983 build) is very similar in age and quality but sold lowe

**Comp Sale 3 MLS Remarks:**

Set in a peaceful, private setting where children ride bikes and walk to school, this is truly a close-knit community street. Enjoy the convenience of walking to local schools, the Rye City Marina, Rye Town Beach and Park, and taking in scenic water views along the Boardwalk loopperhaps with a coffee from a nearby deli in hand on your way home! The heart of the home is a large open-plan kitchen, dining, and family area, featuring a dual-aspect wood-burning fireplace shared with the living room. The living room boasts high ceilings and an abundance of natural light, creating an airy, welcoming atmosphere. The first floor also includes a formal dining room with a picture window overlooking the front yard. Theres ample parking in the driveway and a two-car garage that opens into a mudroom with side door access to the kitchenperfect for unloading groceries or welcoming friends and family. A formal front entrance provides an elegant option for guests. Patio doors lead to a bluestone patio and a private backyard, ideal for outdoor entertaining. Upstairs, youll find an open-plan office area and four spacious bedrooms with three full bathrooms. The primary suite features two walk-in closets and a generous en-suite with an oversized shower. The laundry area is conveniently located on this floor, along with a bright landing that currently serves as an officeeasily convertible into a fifth bedroom or enclosed glass workspace. Additional bedrooms include a second en-suite, a guest room

**Comp List 1 Agent Remarks:**

49 Green Ave t., 5/3.5, 3K sf, $\approx 10 \text{K}$ sf lot) is a prime Milton Point home near the beach and school. 71 Apawamis Ave (Sold $3.4M, 5/4.5, 3.4K sf, $\approx 15 \text{K}$ sf lot) is a larger home on a much larger lot.

**Comp List 1 MLS Remarks:**

Fabulous location, centrally located in Rye .357 acre in R3 zone, in walking distance to Midland Elementary, Rye Middle & High Schools, Downtown Rye, Rye Recreation, Rye Arts Center, Rye Town Park & Oakland Beach. Great opportunity to make this house your own or build your dream home! House & Systems will be sold As Is.

**Comp List 2 Agent Remarks:**

49 Green Ave (, 5/3.5, 3K sf, 1983 build, large lot) is a renovated Colonial near Milton School. 5 Stoneycrest Rd (Sold $3.97M, 5/5.5, 6.5K sf, 1993 build, 0.4 acre) sold much higher due to its superior size, newer construction, and greater

**Comp List 2 MLS Remarks:**

Nestled into one of Rye's most picturesque neighborhoods, this much-loved colonial overlooks the Edith Reade  Wildlife Sanctuary with views across Playland Lake from its perch high above the water line.  With forever wild and water views from the backyard, 5 Stonycrest offers the rare combination of peaceful privacy, spacious rooms and walkability within the Rye City School District.  With gleaming hardwood floors throughout, the main level is ideal for entertaining. Large living room w wood-burning fireplace, dining room, powder room, eat-in kitchen & family room surrounded by windows and flooded with light.  Enjoy your coffee or breakfast on the screened-in porch and take in the gorgeous vistas across the water.  The bedroom level has an oversized primary suite with 3 large, fitted closets and a primary bath.  Four additional, well-apportioned bedrooms and an updated full bath complete the layout.  The retro, walk-out basement was built for parties and is ready for your updates!  With a full bar, wood-burning fireplace, and French doors to the bluestone patio and yard, this space is ready to be enjoyed as a throwback or updated with your vision.  The laundry room, large basement storage room, locked exterior storage space, and generous 2 garage provide all of the space needed to store & maintain the accessories of modern, luxury living

**Comp List 3 Agent Remarks:**

49 Green Ave ( 5/3.5, 3K sf, 1983 build, large lot) is a well-located Milton Point home. 95 Dogwood Ln (Sold $2.5M, 4/3.5, 2.7K sf, 1957 build) sold lower despite renovations

**Comp List 3 MLS Remarks:**

Prominently positioned in the sought after Dogwood Lane enclave, this handsome 1909 Colonial offers the perfect blend of historic charm and modern potential. Sited on over half an acre with rear property access to Upper Dogwood Lane, the beautiful and natural landscaping enhance the privacy and special qualities of this location. An open floor plan and high ceilings provide an airy, light filled atmosphere throughout its three levels of living space. The welcoming wrap around front porch leads to a beautifully proportioned Entry Hall that reflects the welcoming warmth of the entire home from the Living Room, Family Room, Dining Room, Pantry to its Eat in Kitchen and Powder room and continuing to the second and third floors featuring a total of 5 Bedrooms and two Bathrooms.  With original architectural details and endless potential for customization, 95 Dogwood Lane presents a rare opportunity to create your dream residence, all within a short stroll to the train and downtown Rye.

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350



| Address: 49 Green Ave, Rye, NY, 10580 | | | | Loan#: | Order ID: |
|---|---|---|---|---|---|
| Borrower's Name | SCIOLI | | | Occupancy | Occupied |
| Inspection Type | Exterior | Client | Selene Finance LP | Project Name | |
| Order Date | 11/03/2025 | Inspection Date | 11/05/2025 | Completion Date | 11/06/2025 |

## Addendum

2 Robert Crisfield Pl is the best comparable for the "as is" value of 49 Green Ave. It offers the most direct comparison because it is a similarly sized Colonial (2,762 sq ft vs. 2,991 sq ft), was built around the same time (1984 vs. 1983), and, crucially, is located on a parallel street, steps away from the same Milton School.Its recent sale price of $2,800,000 (July 2025) provides the most current and geographically relevant data point to support the subject's minimum value, requiring minimal adjustment for size and lot area.NOTE: Due to the limited availability of recent sales comparables within the immediate subject area, the comparable search was extended outside the one-mile radius. Comp 3 (95 Dogwood Ln, Rye, NY 10580) was used as an adjusted listing comparable, requiring specific adjustments for factors such as location, view, and time of sale.

## QC Analyst Comments

None

## Subject Repair Estimates

| Interior Items | Comments | Est. Cost | Exterior Items | Comments | Est. Cost |
|---|---|---|---|---|---|
| Interior Paint | | $0 | Exterior Paint | | $0 |
| Drywall/Plaster | | $0 | Siding/Trim | | $0 |
| Flooring | | $0 | Roof | | $0 |
| Electrical/Plumbing | | $0 | Gutters/Downspouts | | $0 |
| Kitchen | | $0 | Exterior Doors | | $0 |
| Bathrooms | | $0 | Windows | | $0 |
| Interior Doors | | $0 | Structural | | $0 |
| Heating/Cooling | | $0 | Garage | | $0 |
| Mold/Discoloration | | $0 | Pool/Spa | | $0 |
| Interior Other 1 | | $0 | Exterior Other 1 | | $0 |
| Interior Other 2 | | $0 | Exterior Other 2 | | $0 |
| **TOTAL AMOUNT** | | $0 | | | |

What will the condition rating be after the recommended repairs are completed?

## Subject Market Potential

| | | | | | |
|---|---|---|---|---|---|
| Estimated occupancy for subject's neighborhood (must total 100%) | 90% | Owner | 10% | Tenant | 0% | Vacant |

| | |
|---|---|
| Current occupant is most likely | Homeowner |
| In its current condition would the subject qualify for FHA financing? | Yes |
| If no, explain: | |
| Does the subject property conform to the neighborhood (condition, age, style, etc.)? | Yes |
| Does the subject property appear to have been updated? | Yes |
| If yes, explain: | Seems Garage Area was replaced since purchased in 2018 and outside siding and door |
| Is subject in an investor-driven market? | No |
| Most likely buyer of subject property? | Owner Occupant |
| Subject market has (or is) experiencing revitalization or high remodel activity? | No |
| If yes, explain: | |
| What is the predominant condition in subject's neighborhood? | As/Is |
| Is the subject a good candidate for rehab? | No |
| Recommended marketing strategy? | As/Is |

## Marketability

| | | | |
|---|---|---|---|
| Number of Comparable Sales in Subject's neighborhood during the past 12 months? | 12 | | |
| Price Range | $1,750,000 | to | $4,650,000 |
| Number of Competitive Listings in Subject's neighborhood on the market? | 6 | | |
| Price Range | $1,490,000 | to | $4,195,000 |
| Current inventory of comparable properties in subject's neighborhood? | Undersupply | | |
| Property Values for comparable properties have | Depreciating | | |
| Typical Marketing Time (average DOM of comparable sales) | 28 | | |
| Marketing Time Trend | Stable | | |
| REO Trend | Decreasing | | |
| What is the typical price discount % between arms-length and REO/Short Sales? | 3 | | |
| Median monthly market rent for comparable properties | $16,000 | | |
| Industrial within 0.25 miles? | No | | |
| Employment Conditions | Stable | | |

### Neighborhood Description:

The subject property at 49 Green Ave, Rye, NY, 10580 is located in the highly desirable, affluent, and historically rich Milton Point neighborhood of Rye, New York.  This area is one of Rye's most coveted residential sections, known for its proximity to the water, excellent schools, and high quality of life.

### General Comments about Market Conditions in subject's neighborhood/ market area:

price Correction from Peak: While the long-term trend is massive appreciation, the median sale price has recently experienced a year-over-year decrease of about -18.7% to -30.9%. This is typically interpreted as a market correction from the unsustainable highs seen during the pandemic, rather significant loss of value



| Address: 49 Green Ave, Rye, NY, 10580 | | | | Loan#: | Order ID: |
|---|---|---|---|---|---|
| Borrower's Name | SCIOLI | | | Occupancy | Occupied |
| Inspection Type | Exterior | Client | Selene Finance LP | Project Name | |
| Order Date | 11/03/2025 | Inspection Date | 11/05/2025 | Completion Date | 11/06/2025 |

## CERTIFICATION & LIMITING CONDITIONS OF SALES AGENT OR BROKER

I certify and hereby confirm:

The subject property inspection for a Broker Price Opinion, whether interior or exterior, is not a 'home inspection' and should not be construed as such. As part of the valuation process the real estate agent performs a non-invasive visual inspection that is not intended to reveal defects or detrimental conditions that are not readily apparent.  Any subsequently discovered defects or detrimental conditions could adversely affect the agent's opinion of value, and a reconsideration would be warranted. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause  of the client, the dollar amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this a Broker Price Opinion.
- I did not base, either partially or completely, my analysis and/or the opinion of value in this report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
- I have made a personal inspection of the property that is the subject of this report.
- By virtue of my license, experience and training, I satisfy the competency rule, have met the state and federal requirements for completing a Broker Price Opinion, and have the skills and knowledge to produce a credible and reliable value conclusion.
- I have met the education and continuing educational requirements for my license.
- I have followed the applicable laws and regulations of the state where I am licensed, as well as, all federal laws governing the completion of a Broker Price Opinion.

**SIGNATURE**

- Agent/Broker Name:  **Christopher Barclay**
- License Number:
- Licensing State:  **NY**
- Expiration Date:  **12/20/2025**
- Company Name:  **Grand Lux Realty Cerrone**
- Company Address:  **704 Saw Mill River Road, Ardsley, NY. 10502**
- Distance from Subject: **8.50 Miles**
- Telephone Number:
- Email Address:

- E- Signature:  *Christopher Barclay*

## COMPLIANCE & DISCLAIMER

**Federal Compliance:**

This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.



| Address: 49 Green Ave, Rye, NY, 10580 | | | Loan#: | Order ID: |
| Borrower's Name | SCIOLI | | Occupancy | Occupied |
| Inspection Type | Exterior | Client | Selene Finance LP | Project Name |
| Order Date | 11/03/2025 | Inspection Date | 11/05/2025 | Completion Date | 11/06/2025 |

**AERIAL MAP**



Distant Map

**AERIAL MAP**



Proximate Map

INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED
www.AssetVal.com - (800) 560-7350